72   10
89   68
89  355
72   10
91  647
72   10
93  643
72   10
103  469
72   10
105  176

# The People v. Horace Murray.

*Criminal law—Intoxication of respondent at time of offense—Trial
—Duty of court—Charge to jury—Requests—Excessive
sentence.*

1. While the intoxicated condition of a respondent at the time of
the commission of an alleged rape cannot furnish any legal
excuse for what he did, it has an important bearing upon his
turpitude and the quality of his crime, and should have an
important influence in determining the extent of the punish-
ment to be inflicted.

2. While this Court cannot reverse a judgment or set aside a ver-
dict upon a review of the facts, when properly submitted to
the jury, and will not ordinarily depart from such rules of
practice as have been adopted as the result of the longest
experience, yet, under its general superintending power and
control over all inferior courts, and their proceedings, given
under its appellate jurisdiction, in a criminal case, upon a
review of all the proceedings which have resulted in a convic-
tion, if the Court can see that the respondent has not had a
fair trial, and it is made manifest that injustice has been done,
it becomes the imperative duty of the Court, with or without
objections and exceptions by the respondent's counsel, to set
aside such proceedings, and order a new trial, and the present
presents such a case.

3. If any of the testimony, as given by the people's witnesses, is
especially referred to and narrated in the charge to the jury,
the testimony and explanations relating to the same subject on
the part of the respondent should also be referred to.

4. In the absence of any requests from counsel, it is the duty of
the circuit judge to see to it that the case goes to the jury in
a clear and intelligent manner, so that they may have a clear
and correct understanding of what it is they are to decide, and
he should state to them fully the law applicable to the facts;
and especially is this his duty in a criminal case.

5. Where the punishment for an offense is for a term of years, to
be fixed by the judge, it should never be made to extend beyond
the average period of persons in prison life, which seldom
exceeds 25 years.

Error to Kalamazoo. (Buck, J.) Argued June 27, 1888. Decided October 19, 1888.

Respondent was convicted of carnally knowing and abusing a girl under the age of 14 years, and sentenced to State prison for 50 years. Judgment reversed and new trial ordered. The facts are stated in the opinion.

*William N. Cook (Osborn & Mills*, of counsel), for respondent.

*Moses Taggart*, Attorney General, and *Frank E. Knappen*, Prosecuting Attorney, for the people.

SHERWOOD, C. J. The respondent in this case was convicted in the Kalamazoo circuit on February 28, 1888, of the crime of carnally knowing and abusing a young girl under the age of 14 years, and was sentenced to imprisonment at Jackson for the term of 50 years.

The evidence shows that the claimed rape was committed in a barn in the township of Brady, in Kalamazoo county, on January 7 last, and that complaint was not made until February 20 following, and then not by any member of the child's family.

It appears from the record that the respondent was a young man about 23 years of age, and addicted to the use of intoxicating liquor to excess; that his parents lived at South Haven, and that he was accustomed to spend the winters at Mrs. Murray's, and had for eight or ten years past; that he had been at Mrs. Murray's about two weeks immediately preceding the commission of the offense charged, and on that day, if the testimony is to be believed on either side, he was so far intoxicated that it is doubtful if he knew what he did.

It further appears that the offense as charged was committed in the day-time, about 2 o'clock in the afternoon; that the girl, though not yet 11 years old, was not seri-

ously injured, and that she would not even tell her mother of what occurred until she had been threatened with punishment if she did not do so; that at the time the offense was committed the girl was attending school, and that she continued her school the same after as before the assault upon her occurred. And upon her examination she testified when first interrogated that respondent did not hurt her, but subsequently said he did, and her undergarments were stained with blood.

There was no medical examination ever made. The only examination made by any one, as the record shows, was by an aunt of the girl, who, in her testimony, says she found the parts disturbed somewhat inflamed, but the girl did not show anything of the injury in her walk.

It further appears that the respondent is cousin to the girl, and that whenever before he had been in the family he was uniformly kind to the children; and the mother of this girl accounts for his criminal conduct towards the child upon the ground he was so far intoxicated that he did not know what he was doing at the time, and does not believe he would have committed the act if sober.

From all the testimony it is quite apparent that the physical injuries the child received on the occasion were slight, and, if the common-law rules were to be applied, the act shown by the proofs would scarcely reach the grade of the crime charged; and such as it was it seemed not to have excited any great amount of concern or anxiety in the family, as no member thereof made any complaint, and not until the neighbors learned of what had occurred was any action taken in the matter.

Upon the trial the record discloses that the respondent was not very vigorously defended at the circuit. But two exceptions were taken to any rulings in receiving the testimony. Several were, however, made to the charge.

In this Court the whole record has been gone over by

able counsel upon both sides, and our attention has been earnestly challenged to such errors as have been assigned. All the proceedings had and testimony taken at the circuit are before us. To the general management and conduct of the people's case before the jury, and which are claimed by counsel for the respondent to have been such that no fair trial could be had, objection is now principally made. This view of the case was urged with much vigor and force by respondent's counsel, and a careful review of the whole proceedings has impressed us with the great impropriety and danger of the course pursued.

The case does not show the aggravating circumstances which so frequently accompany criminal conduct of the character charged, and especially is this true when we consider the intoxicated condition of the respondent. While this cannot furnish any legal excuse for what he did, it has an important bearing upon the turpitude of the respondent, and the quality of his crime, and should have had an important influence in determining the extent of the punishment to be inflicted after conviction had. Such considerations, however, seem to have been entirely without weight with the court below, as is very clearly manifest from the extent of the punishment meted out to the respondent.

The first objection taken to the testimony received by the court relates to the conduct of the respondent when the sheriff and his deputy arrested him at South Haven several weeks after the crime was committed. This place was his home. It appears he was in the back yard of a saloon premises at the time, where he claims he had gone to urinate behind some barrels. The prosecution claimed he was there behind the barrels hiding away from the officers, and that when they appeared and asked if his name was Murray he denied it, but, on being asked

the second time, he said it was Murray, and the officers arrested him, and brought him back to Kalamazoo county. This testimony was objected to. These facts were made prominent before the jury, both upon the trial and in the court's charge, as evidence of guilt.

The respondent denied that he was hiding at the time, and it does not appear that he knew the sheriff or his deputy, or that there was a warrant out for him, or that he was charged with crime; and he always asserted, and his relatives believed, that he knew nothing of the liberties he took with the girl; and the sheriff had not yet informed him of the charge made.

The other exception taken to the testimony offered and received relates to what occurred on the same occasion, and need not be further separately considered. Under the circumstances of this case the admission of this, and the use made of it, was prejudicial to the respondent, and it should not have been received. This disposes of the exceptions taken to the rulings relating to the testimony.

Counsel for respondent, however, insist that our duty does not end here in disposing of these two exceptions to the testimony, but they ask that we shall consider the whole conduct of the trial, the manner the witnesses were examined, the character of the questions put, and their natural tendency to affect the jury prejudicially to the respondent, before we leave this subject; that they have placed all the proceedings had by which the conviction was brought about, and which has resulted in what they claim to be a life sentence, in effect, before us, and ask that we shall say whether or not the prisoner has had that fair and impartial trial guaranteed to him by the law of the land. They ask us to pass upon this question as matter of right under our Constitution and laws, whether objection was made or exception taken or not upon the

trial; and if the record shall show that the court allowed proceedings so far illegal as to result in depriving the respondent of his liberty, or in the infliction of unusual punishment, that this Court may give relief against such illegal proceedings.

While this Court cannot reverse a judgment or set aside the verdict upon a review of the facts, when such facts have been properly submitted to a jury, and will not ordinarily depart from such rules of practice as have been adopted as the result of the longest experience, yet, under the general superintending power and control over all inferior courts, and their proceedings, given under the appellate jurisdiction of this Court, I have no doubt, in a criminal case, upon a review of all the proceedings had which have resulted in the conviction of a respondent, if the Court can see that a fair trial has not been had, and it is made manifest that injustice has been done, it then becomes the imperative duty of the Court, with or without objections and exceptions by the respondent's counsel, to set aside such proceedings, and order a new trial; and we all think the present presents such a case.

In cases of this character it is with great reluctance that witnesses many times give their testimony, and leading questions have to be put. They should, however, be avoided except when absolutely necessary. It is evident greater latitude was allowed in this case than the rule of safety permits. Many of the questions put to the respondent were improper when he was upon the stand, and were well calculated to arouse the prejudices of the jury towards him, and contained matter highly improper, and which should not have been allowed by the court.

Leaving the testimony and manner of trial, we shall not consider the charge at any great length. We will, however, say that we do not think the charge sufficiently called the attention of the jury to the facts claimed and

testified to by respondent upon subjects to which the people's testimony had also been given. If any of the testimony is to be especially referred to and narrated to the jury by the court, as given by the people's witnesses, the testimony and explanations relating to the same subject upon the part of the respondent should also be referred to.

Undue prominence is often given to unimportant testimony by the course pursued by the court. Much care should be observed in this regard by the circuit judge. We think this charge has this infirmity. For instance, it says the respondent fled, without stating his testimony upon that subject. Officers were sworn who arrested him, and allowed to give evidence of what was said, but no charge was given of the rule applicable in such cases. The presumptions of the law in favor of respondent were entirely omitted in the charge. The respondent was sworn, and some of his testimony contradicted the people's witnesses; yet no charge was made stating what weight the jury might give to his testimony.

Without any requests from counsel it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case. In this case it was not so done. Too much reliance is often placed upon counsel by the court in this respect for requests; but this should not be done. The court must do its duty in a criminal case, whether counsel do so or not. It is to the court that the accused has a right to look to see that he has a fair trial.

There is another feature of this case to which we wish to call special attention, and that relates to the sentence imposed. It is for 50 years, and will very likely reach

beyond the natural life of the respondent, unrestrained of his liberty, and overreach by 10 or 15 years his natural life if so restrained. We see nothing in this record warranting any such sentence, and it must be regarded as excessive. It will not do to say the executive may apply the remedy in such a case. We do not know what the executive may do, and it is but a poor commentary upon the judiciary when it becomes necessary for the executive to regulate the humanity of the bench.

But the Constitution has not left the liberty of the citizen of any state entirely to the indiscretion or caprice of its judiciary, but enjoins upon all that unusual punishments shall not be inflicted. Where the punishment for an offense is for a term of years, to be fixed by the judge, it should never be made to extend beyond the average period of persons in prison life, which seldom exceeds 25 years.

We are all of opinion that the present case shows an abuse of the discretion vested by the statute in the circuit judge in this respect.

The judgment must be reversed, and a new trial granted.

The prisoner, in the mean time, will be let to bail, in the sum of $1,000, with two good and sufficient sureties, to be approved by the circuit judge.

MORSE, CAMPBELL, and LONG, JJ., concurred. CHAMPLIN, J., concurred in the result.