PEOPLE v CLEVELAND WELLS

Docket No. 47461. Submitted December 4, 1980, at Lansing.—Decided February 4, 1981.

Cleveland Wells, Jr., was convicted of armed robbery and assault with intent to rob while armed, in Ingham Circuit Court, Donald L. Reisig, J. He appealed. The Court of Appeals reversed his convictions and remanded his case for a new trial at the option of the prosecutor, or for entry of convictions of larceny from a person. The prosecuting attorney elected to retry the defendant after the Supreme Court denied the prosecuting attorney's application for leave to appeal, 406 Mich 901 (1979). Upon retrial, Wells was again convicted of armed robbery and assault with intent to rob while armed, Michael G. Harrison, J. The defendant appeals, alleging that 1) he was denied a fair trial because the jury may have been tainted in that one juror was aware that the defendant was "in trouble" and some jury members possibly saw the defendant in handcuffs; 2) the trial court erred in holding that it was not bound by an evidentiary ruling from the defendant's prior trial, and 3) that he was deprived of a fair trial when the prosecution elicited testimony that the perpetrator of the armed robbery had dilated eyes. *Held:*

1. The trial court dealt properly with the juror's knowledge of the defendant's "trouble", and did not err in denying the motion for a mistrial. The court's cautionary instruction was sufficient to deal with the improper information brought to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 240.
   Propriety and prejudicial effect of gaging, shackling, or otherwise physically restraining accused during course of state criminal trial. 90 ALR3d 17.

[2] 21 Am Jur 2d, Criminal Law §§ 239, 240.
   Propriety and prejudicial effect of compelling accused to wear prison clothing at jury trial—federal cases. 26 ALR Fed 535.

[3, 4] 5 Am Jur 2d, Appeal and Error § 744 *et seq.*

[5] 5 Am Jur 2d, Appeal and Error § 750.

[6] 5 Am Jur 2d, Appeal and Error §§ 553 *et seq.,* 838.

attention of the jury by the individual juror and the observation of the defendant in handcuffs.

2. The doctrine of "law of the case" is not inflexible and need not be applied to create an injustice or where a prior decision is clearly erroneous. The trial court did not err in ruling that it was not bound by the previous ruling of the judge in the defendant's first trial on the same charges, that evidence of an incriminating statement made by the defendant could be used for impeachment purposes only if the defendant specifically denied making a statement or testified that he made a statement that was different. Here, the trial court properly ruled that evidence of the statement was admissible for purposes of impeachment, conditioned only on the defendant taking the stand and the laying of a proper foundation.

3. The defendant's failure to object at trial to the prosecutor's eliciting testimony to the effect that the perpetrator of the armed robbery had dilated eyes prevents appellate review in the absence of manifest injustice. There is no manifest injustice since the testimony favored the defendant and was used by defense counsel in closing argument.

Affirmed.

1. CRIMINAL LAW — HANDCUFFS AND SHACKLES — DEFENDANTS.

Generally, a defendant is entitled to appear in court without handcuffs and unshackled; however, in various circumstances a defendant may be shackled outside of the courtroom to prevent escape.

2. CRIMINAL LAW — HANDCUFFS AND SHACKLES — PREJUDICE TO DEFENDANT.

Absent a showing that orderly court process did not necessitate a defendant to appear in court in handcuffs or prison uniform, or that prejudice resulted, the Court of Appeals will not reverse a defendant's conviction merely because the jury may have seen the defendant in handcuffs.

3. WORDS AND PHRASES — LAW OF THE CASE — DEFINITIONS.

The doctrine of "law of the case" is defined as shorthand for the holding of a prior decision between the same parties which is applied by a lower court upon remand or an appellate court upon subsequent review.

4. WORDS AND PHRASES — LAW OF THE CASE.

The thrust of the doctrine of "law of the case" is that an inferior court is bound by the rulings of a superior court and decisions

made on a first appeal are not open to review on a subsequent appeal.

5. WORDS AND PHRASES — LAW OF THE CASE.

The doctrine of "law of the case" is flexible and need not be applied to create an injustice or where a prior decision is clearly erroneous.

6. APPEAL — CRIMINAL LAW — MANIFEST INJUSTICE — STANDARD OF REVIEW.

Absent a showing of manifest injustice appellate review on the issue is precluded where a defendant failed to object at trial to certain testimony elicited by the prosecuting attorney.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Charles M. Sibert,* Chief Appellate Attorney, and *Janis L. Blough,* Assistant Prosecuting Attorney, for the people.

*Ronald J. Bretz,* Assistant State Appellate Defender, for defendant on appeal.

Before: DANHOF, C.J., and M. F. CAVANAGH and MACKENZIE, JJ.

DANHOF, C.J. Defendant was charged with four counts of armed robbery, MCL 750.529; MSA 28.797, and one count of assault with intent to rob while armed, MCL 750.89; MSA 28.284, after four persons were robbed at the Adult Education Center in Lansing, Michigan, on March 25, 1975. He was convicted by a jury on all counts and sentenced to 15 to 40 years imprisonment. He appealed as of right and this Court reversed and remanded for a new trial at the option of the prosecutor or for entry of convictions of larceny from a person. The people's application for leave to appeal was denied by the Michigan Supreme Court on March 29, 1979. The people elected to retry defendant.

On June 1, 1979, he was again found guilty as charged on all counts and sentenced to 14 to 40 years imprisonment with credit for 1,553 days. He appeals as of right.

On appeal, defendant argues that he was denied a fair trial because the jury may have been tainted.

Soon after they began deliberation, the jury sent the judge a note which read:

"It has been brought to our attention by one juror that they had knowledge of Wells' term in jail. She does not know him or his family personally, but admits that she recognized Wells' father in the gallery the first day of trial. She claims this knowledge has no bearing on her decision, but we felt obliged to bring this to your attention."

Defendant moved for a mistrial because of the prior knowledge of that juror and because the entire jury became aware of it. The trial court questioned the juror in chambers. The juror denied saying "term in jail". Rather, she knew that defendant's father is a janitor in the building in which her daughter works and she goes there to get her hair done. There, she "heard that the boy was in trouble". She stated that her knowledge would have no effect on her decision.

When asked why the note contained a reference to jail, the juror told the court that "[s]omeone saw him coming from lunch with handcuffs and assumed that he had been in jail and then they mentioned the fact that he was wearing clothes that looked like perhaps he had come from the jail".

Following the in-chambers questioning, the court denied defendant's motion for mistrial but read a curative instruction to the jury covering both the

juror's hearsay knowledge of "trouble" and the observation of defendant in handcuffs.

Initially we conclude that the trial court dealt properly with the individual juror's knowledge of defendant's "trouble". The juror conscientiously volunteered her knowledge and affirmed that her impartiality would not be influenced by it.

A closer question is presented by the indication that the rest of the jury inferred that defendant was in jail because one of the jurors saw him "coming from lunch" in handcuffs and by the jury's hearsay knowledge that defendant had been "in trouble".

As a general rule, a defendant is entitled to appear in court without handcuffs and unshackled. *People v Shaw,* 381 Mich 467; 164 NW2d 7 (1969), *People v Duplissey,* 380 Mich 100; 155 NW2d 850 (1968), *People v Panko,* 34 Mich App 297; 191 NW2d 75 (1971). However, in various circumstances it has been held that a defendant may be shackled outside of the courtroom to prevent escape.

In *People v Anderson,* 29 Mich App 578; 185 NW2d 624 (1971), *aff'd* 389 Mich 155; 205 NW2d 461 (1973), the defendant was placed in an automobile with his hands bound behind him while the jury viewed the complainant's and defendant's automobiles. Since it was unlikely that the jury could see that he was handcuffed, since removing the cuffs would have only drawn attention to the situation, and since defendant was outside of the courthouse where the possibility of escape increased, the restraint was held justifiable by this Court. The Supreme Court adopted this portion of the opinion as its own.

In *People v Ernest Smith,* 87 Mich App 18; 273 NW2d 573 (1978), a uniformed police officer led the

handcuffed defendants past one of the jurors who was partially turned away and speaking to a third party. The juror testified that she recognized the defendants but noticed nothing unusual about them. This Court found no showing of prejudice that would warrant a mistrial; the officer's actions were inadvertent and the juror was sufficiently absorbed in her conversation that her view of the defendants made little impression on her.

In *People v Herndon,* 98 Mich App 668, 672; 296 NW2d 333 (1980), this Court noted that as a matter of practical necessity, the conduct of orderly court process often unavoidably requires a defendant to appear in court in handcuffs or prison uniform. Therefore the panel stated that absent a showing that such necessity was lacking or that prejudice has resulted, this Court will not reverse a conviction merely because the jury may have seen the defendant in handcuffs. In *Herndon* the panel found no evidence that the jury ever saw defendant in handcuffs and noted that defendant did not ask for an evidentiary hearing to inquire as to whether the jurors saw defendant in handcuffs and, if they did, whether they were thereby prejudiced.

In the present case, while defendant moved for a mistrial based on the note, he did not request an evidentiary hearing to determine whether other members of the jury were prejudiced. Defendant was inadvertently observed wearing handcuffs outside of the courtroom while returning from lunch. There is no indication that defendant was prejudiced by the jury's inferred knowledge that he was in jail. In addition, the jury knew that this was the second trial of defendant. At voir dire they all swore that that fact would not play any part in their verdict. Testimony from the first trial was

used in this trial and defendant was identified through the use of mug shots. In light of this information, it is likely that the jury inferred that he was in jail and consequently unlikely that the jurors' observance of the handcuffs prejudiced them against defendant.

We hold that the trial court did not err in denying the motion for a mistrial. The court's cautionary instruction was sufficient to deal with the improper information brought to the attention of the jury by the individual juror and the observation of defendant in handcuffs.

Defendant also argues that the trial court erred in holding that it was not bound by an evidentiary ruling from defendant's prior trial.

At defendant's first trial, Judge Reisig held a full *Walker*[1] hearing as to the admissibility of an incriminating statement made by defendant to a detective prior to delivery of *Miranda*[2] warnings and ruled that the statement could be used for impeachment purposes only if defendant specifically denied making a statement to the detective or testified that he had made a statement that was different. This ruling was not an issue on appeal.

Defendant's second trial was presided over by Judge Harrison. He ruled that he was not bound by the prior ruling and that the statement was admissible for purposes of impeachment, conditioned only on defendant's taking the stand and the laying of a proper foundation.

Since on this record it is clear that Judge Reisig erred in his ruling in the first trial, *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1960).

(1971), the issue is whether a trial court is bound by a previous court's erroneous ruling on evidence by the doctrine of the "law of the case".

"Law of the case" is an ill-defined and amorphous creature. In *Topps-Toeller, Inc v Lansing,* 47 Mich App 720, 727; 209 NW2d 843 (1973), this Court defined it "as shorthand for the holding of a prior decision between the same parties which is applied by a lower court upon remand or an appellate court upon subsequent review".

From our review of the authorities, the thrust of the doctrine is that an inferior court is bound by the rulings of a superior court and that decisions made on a first appeal are not open to review on a subsequent appeal. Wharton's Criminal Procedure (12th ed), § 641, p 357; 5 Am Jur 2d, Appeal & Error, § 747, p 191. See *People v Radowick,* 63 Mich App 734; 235 NW2d 28 (1975), where this Court held that the law of the case was dispositive where the circuit court, on appeal from a district court, ruled that a confession should have been suppressed. When the same confession was admitted in a subsequent preliminary examination, this Court held that the circuit court ruling barring the confession was binding.

While the doctrine seems limited to rulings on appeal, there are anomalous decisions. In *People v Flansburgh,* 71 Mich App 1, 6; 246 NW2d 360 (1976), a panel of this Court, without citation of authority supporting this proposition, said that the lower court's ruling on entrapment will govern the second trial as law of the case until expressly overruled by a higher court. In *People v Dimitru,* 224 Mich 670, 673; 195 NW 420 (1923), the Michigan Supreme Court (without specifically invoking "law of the case") held that an order granting separate trial by the presiding judge of the Recorder's Court could not be ignored by the trial judge.

We need not decide whether a second trial court is bound by the rulings of the first since the doctrine is not inflexible and need not be applied to create an injustice or where a prior decision is clearly erroneous. 21 CJS § 195b, pp 333-334; 5 Am Jur 2d Appeal & Error, § 750, p 193; 132 ALR 15, p 69.

Thus, we hold that Judge Harrison was correct in holding that he was not bound by the prior erroneous ruling of the judge presiding over the first trial.

Finally, defendant argues in a supplemental brief that he was deprived of a fair trial when the prosecutor "elicited" testimony that the perpetrator of the armed robbery had dilated eyes.

Defendant's failure to object at trial prevents appellate review in the absence of manifest injustice. *People v Farnsley,* 94 Mich App 34; 287 NW2d 361 (1979). We find no manifest injustice since the testimony favored defendant and was used by trial counsel in closing argument. Moreover, the failure to object was not ineffective assistance of counsel, but rather a trial tactic, considering defendant's eye color identification defense herein. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

Affirmed.