PEOPLE v OSCAR MOORE

Docket No. 82073. Submitted March 4, 1986, at Lansing. Decided
November 16, 1987. Leave to appeal applied for.

Oscar Moore III was convicted of one count of armed robbery, two
counts of first-degree criminal sexual conduct, one count of
assault with intent to do great bodily harm less than murder,
and four counts of possession of a firearm during the commis-
sion of a felony following a jury trial in Oakland Circuit Court
and was sentenced, Steven N. Andrews, J. Defendant appealed.

The Court of Appeals *held:*

1. The trial court's refusal before trial to definitively rule on
the admissibility of evidence of defendant's prior convictions to
show perjured testimony did not deny defendant his right to
testify. The court was unable to rule in an anticipatory manner
because defendant made no specific offer of proof as to what his
testimony would be, but the court did explain the possible
consequences of defendant's testimony. Furthermore, admission
of the prior conviction evidence would have been wholly proper.

2. There was no abuse of discretion in the trial court's refusal

REFERENCES
Am Jur 2d, Criminal Law §§ 20, 542, 606, 651, 692, 698, 699, 844-
846, 925, 928, 935.
Am Jur 2d, Trial §§ 153-157.
Am Jur 2d, Witnesses §§ 569 *et seq.*
Review on appeal, where accused does not testify, of trial court's
preliminary ruling that evidence of prior convictions will be
admissible under Rule 609 of the Federal Rules of Evidence if
accused does testify. 54 ALR Fed 694.
Propriety and prejudicial effect of gagging, shackling, or otherwise
physically restraining accused during course of state criminal
trial. 90 ALR3d 17.
Right to impeach credibility of accused by showing prior conviction,
as affected by remoteness in time of prior offense. 67 ALR3d 824.
Propriety of reopening criminal case in order to present omitted or
overlooked evidence, after submission to jury but before return of
verdict. 87 ALR2d 849.
Validity, under indeterminate sentence law, of sentence fixing
identical minimum and maximum terms of imprisonment. 29
ALR2d 1344.

to reopen proofs, after they had been closed and closing arguments completed, so that defendant could testify.

3. The fact that the jury briefly saw defendant in handcuffs does not entitle defendant to reversal of his convictions. Defendant failed to show that he was prejudiced by the jury's seeing him in handcuffs.

4. Defendant's contention that he was improperly convicted of multiple counts of felony firearm is without merit.

5. Defendant's one hundred to three hundred year sentence on his armed robbery conviction is not a valid sentence. A person convicted of armed robbery may be sentenced to prison for life or for any term of years. An indeterminate sentence "for any term of years" must be one for less than life and must be fashioned with consideration of a defendant's life expectancy at the time of sentencing, as determined by the trial court. Furthermore, a sentence approaching a defendant's life expectancy must be supported by adequate reasons on the record.

Defendant's convictions are affirmed, but his sentence for armed robbery is vacated and the matter is remanded for resentencing on the armed robbery conviction.

R. L. TAHVONEN, J., dissented from that portion of the majority opinion dealing with defendant's one hundred to three hundred year sentence for armed robbery. He would hold that "any term of years" means a term without limitation as to duration. He would affirm.

1. CRIMINAL LAW — WITNESSES — IMPEACHMENT — PRIOR CRIMINAL CONVICTIONS — PERJURY.

A defendant is entitled to know before he takes the stand whether, if he does so, evidence of his prior criminal convictions can be used for impeachment; however, this rule applies only to evidence of prior convictions offered to impeach a defendant's general credibility; it remains within the trial court's discretion to admit evidence of prior convictions at any time to show perjured testimony by the defendant (MRE 609).

2. TRIAL — REOPENING OF PROOFS.

Reopening a case after the defense has rested is a decision committed to the trial court's sound discretion.

3. TRIAL — REOPENING OF PROOFS — APPEAL.

Factors pertinent in reviewing a court's decision on a motion to reopen proofs during a trial include: (1) whether conditions have changed or undue advantage would result; (2) whether newly discovered and material evidence is sought to be admitted; (3) whether surprise would result; (4) the timing of the

motion during the trial; and (5) the defendant's constitutional right to testify.

4. CRIMINAL LAW — TRIAL — RIGHT TO TESTIFY — WAIVER.

A defendant's right to testify will be deemed waived if the defendant decides not to testify or acquiesces in his attorney's decision that he will not testify; the test is whether the defendant's waiver was knowingly and voluntarily made.

5. CRIMINAL LAW — HANDCUFFS.

A defendant has a right to appear in court without handcuffs and unshackled; however, the conduct of orderly court process often unavoidably requires a defendant to appear at court in handcuffs or shackles and, absent a showing that such necessity was lacking or that prejudice resulted, the Court of Appeals will not reverse a defendant's conviction merely because the jury may have seen the defendant in handcuffs or shackles.

6. CRIMINAL LAW — FELONY FIREARM — SINGLE TRANSACTION — MULTIPLE COUNTS.

A defendant who has committed separate felonies during a single transaction may be convicted of more than one count of possession of a firearm during the commission of a felony.

7. CRIMINAL LAW — SENTENCING — INDETERMINATE SENTENCES — "ANY TERM OF YEARS".

An indeterminate sentence "for any term of years" must be one for less than life and must accordingly be fashioned with consideration of a defendant's life expectancy at the time of sentencing as determined by the trial court and must be supported by adequate reasons on the record.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*), for defendant on appeal.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

SHEPHERD, P.J. Defendant Oscar Moore III was convicted by a jury of one count of armed robbery, MCL 750.529; MSA 28.797, two counts of first-degree criminal sexual conduct, MCL 750.520b(1) and (2); MSA 28.788(2)(1) and (2), one count of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279, and four counts of possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2). He appeals from his convictions, asserting that he was improperly deprived of his right to testify, was prejudiced when the jury saw him in handcuffs, and was improperly convicted of multiple counts of felony firearm. He also appeals his sentence of one hundred to three hundred years on the armed robbery conviction, claiming that the sentence is cruel and unusual, contrary to the indeterminate sentence act, and is so excessive as to shock the judicial conscience. We affirm defendant's convictions, but vacate defendant's armed robbery sentence and remand for resentencing.

Defendant's convictions arose out of his assault and robbery of the victim. At gunpoint, defendant stole the victim's money and necklace and forced her to submit to intercourse and fellatio. After defendant left the victim's home, she immediately contacted the police and gave a description of her assailant. A short time later, defendant, who resembled the victim's description, was observed and followed by an officer. When the officer approached defendant, defendant shot at the officer and fled. Defendant was subsequently apprehended by other officers.

Prior to trial, by motion in limine, the defense succeeded in suppressing evidence of defendant's prior convictions for impeachment purposes under MRE 609. However, the trial court's ruling did not preclude the use of evidence of the prior convic-

tions to show perjured testimony. At the close of the prosecutor's case, defense counsel informed the court that he had recommended to defendant that he not testify. This was based on counsel's understanding that if the defense offered testimony that defendant was "a good law-abiding citizen," the prosecutor would be at liberty to rebut the claim by reference to evidence of the prior convictions. The trial court informed defendant that, if he testified, the prosecution might be permitted to make such use of the evidence of the prior convictions. The court also advised defendant of his right to remain silent and his right to testify. Defendant then chose not to testify.

Defendant first contends that the trial court's refusal to definitively rule on the admissibility of evidence of his prior convictions denied him his right to testify. Our Supreme Court has ruled that a defendant is entitled to know before he takes the stand whether, if he does so, evidence of his prior criminal convictions can be used for impeachment. *People v Lytal,* 415 Mich 603, 609; 329 NW2d 738 (1982), reh den 417 Mich 1105 (1983). However, the *Lytal* rule only applies to evidence of prior convictions offered to impeach a defendant's general credibility. It remains within the trial court's discretion to admit evidence of prior convictions at any time to show perjured testimony by the defendant. *People v Douglas Taylor,* 422 Mich 407, 414; 373 NW2d 579 (1985).

In the instant case, the trial court was unable to rule in an anticipatory manner because defendant made no specific offer of proof as to what his testimony would be. The trial court, however, did explain the possible consequences of defendant's testimony. Those consequences were dependent upon the precise nature of defendant's testimony on the stand. The court declined to speculate on

the nature and the scope of defendant's testimony and its consequent impact upon the admissibility of impeachment evidence. This was a proper exercise of judicial discretion in the absence of a specific offer of proof and is no basis for reversal.

Moreover, admission of the prior conviction evidence would have been wholly proper. A defendant cannot claim under oath to be a "law-abiding citizen" and ask the court to shield his blatant perjury from the jury's view under the guise of MRE 609. MRE 609 does not govern the use of evidence of prior criminal conduct to refute affirmative evidence of a criminal defendant's good character. Nor is MRE 609 "intended to apply where evidence of prior convictions is offered to rebut specific statements of the defendant who testifies at trial." *People v Douglas Taylor, supra* at 414.

After the proofs were closed and closing arguments completed, the defendant sought to reopen the proofs so that he could testify. The trial court refused to reopen the proofs. The defendant now contends that this decision denied him his right to testify.

Reopening the case after the defense has rested is a decision committed to the trial court's sound discretion. *People v Van Camp,* 356 Mich 593, 602; 97 NW2d 726 (1959); *People v Somma,* 123 Mich App 658, 664; 333 NW2d 117 (1983). In reviewing the trial court's exercise of discretion, several factors are pertinent. These include whether conditions have changed or undue advantage would result, whether newly discovered and material evidence is sought to be admitted, whether surprise would result, and the timing of the motion during the trial. *Van Camp, supra; Bonner v Ames,* 356 Mich 537, 541; 97 NW2d 87 (1959); *Kornicks v Lindy's Supermarket,* 24 Mich App

668, 672; 180 NW2d 847 (1970), lv den 384 Mich 771 (1970). In the case at bar, a significant additional factor is defendant's constitutional right to testify. See *People v Simmons,* 140 Mich App 681, 683-684; 364 NW2d 783 (1985), lv den 422 Mich 963 (1985).

The right to testify is not an absolute. It will be deemed waived if the defendant decides not to testify or acquiesces in his attorney's decision that he will not testify. The test is whether the defendant's waiver was made knowingly and voluntarily. *Simmons, supra.*

The record discloses that defendant's waiver of his right to testify was made knowingly and voluntarily. There were no changes in circumstances following that decision. There was no newly discovered evidence, nor does defendant suggest that the prosecution gained undue advantage by the court's decision not to reopen the proofs. Further, the request to reopen proofs was very tardy, as closing arguments had already been concluded. Since defendant had already waived his right to testify, it was within the trial court's sound discretion to permit or disallow his testimony at that stage of the trial. We find no abuse of discretion.

Defendant also argues that the trial court should have declared a mistrial following the jury's brief, inadvertent view of defendant in handcuffs. The incident occurred when the deputies having custody of defendant were returning him to court following a recess.

In general, freedom from shackling of a defendant during trial has long been recognized as an important component of a fair and impartial trial. *People v Duplissey,* 380 Mich 100, 103; 155 NW2d 850 (1968); *People v Baskin,* 145 Mich App 526, 545; 378 NW2d 535 (1985). However, this rule does

not extend to circumstances in which a defendant may be shackled outside a courtroom to prevent escape. *People v Cleveland Wells,* 103 Mich App 455, 459; 303 NW2d 226 (1981); *People v Panko,* 34 Mich App 297, 300; 191 NW2d 75 (1971), lv den 385 Mich 783 (1971). In addition, where a jury inadvertently sees a shackled defendant, there must be some showing that prejudice resulted. *People v Herndon,* 98 Mich App 668, 672; 296 NW2d 333 (1980). It was incumbent upon defendant here to establish prejudice. *Wells, supra.* He failed to do so, and there is no error requiring reversal.

Defendant next contends that he was improperly convicted of multiple counts of felony firearm. Neither his statutory argument nor his constitutional double jeopardy claim have merit.

In *People v Morton,* 423 Mich 650, 655-656; 377 NW2d 798 (1985), our Supreme Court construed the legislative intent of the felony-firearm statute and concluded that, but for a few exceptions not applicable here, every felony committed by a person possessing a firearm may result in a felony-firearm conviction. Significantly, the multiple underlying offenses in *Morton* occurred within the continuum of a single criminal transaction. A defendant's right to be free of double jeopardy is not impinged upon by this result. 423 Mich 655. There is no basis here to reverse defendant's convictions.

Defendant also challenges his sentence for armed robbery on several grounds. In addition to the one hundred to three hundred years imprisonment imposed for armed robbery, defendant was sentenced to life on the two criminal sexual conduct counts, six to ten years in prison on the assault conviction, and consecutive terms of two years each on the four counts of felony firearm.

Defendant does not challenge his sentences on these other charges.

We do not believe the Legislature has authorized a sentence of one hundred to three hundred years in prison for the offense of armed robbery. This case thus presents a question involving the interpretation of the numerous statutes relating to sentencing and parole. As the sentence given was not a valid one, we do not reach the issue of whether such a sentence is shocking to the appellate conscience. We remand for resentencing on the armed robbery charge, at which the trial court shall impose a valid sentence.

MCL 750.529; MSA 28.797 provides that a person convicted of armed robbery may be sentenced to prison "for life or for any term of years." Armed robbery is a Proposal B offense. Persons serving sentences for armed robbery are not eligible for parole until they have served the minimum sentence imposed, less an allowance for disciplinary credits. MCL 791.233b(x); MSA 28.2303(3)(x). In sentencing defendant to one hundred to three hundred years, the trial court used language which appears to describe an indeterminate sentence. MCL 769.9(2); MSA 28.1081(2). It is clear, however, that the trial court intended by its sentence to prevent defendant's release from prison under the "lifer law," MCL 791.234(4); MSA 28.2304(4). See *People v Johnson,* 421 Mich 494; 364 NW2d 654 (1984). Because of the restrictions of Proposal B, what defendant in fact received is, and was intended to be, a life sentence without parole.

The Legislature has mandated life sentences for first-degree murder, MCL 750.316; MSA 28.548, and certain major controlled substance offenses, MCL 333.7401(2)(a)(i) and 333.7403(2)(a)(i); MSA 14.15(7401)(2)(a)(i) and 14.15(7403)(2) (a)(i). The so-

called "lifer law" excludes persons serving the mandatory life sentences for these crimes from the jurisdiction of the parole board. MCL 791.234(4); MSA 28.2304(4). See also MCL 333.7401(3); MSA 14.15(7401)(3).

We are unable to locate any similar statutory authorization for a sentence of life without parole for an armed robbery conviction, however. While such may be a desirable public policy, it is up to the Legislature to authorize such a sentence. The Legislature is the source of a court's sentencing power. *People v Moore,* 51 Mich App 48, 54; 214 NW2d 548 (1974). As we are unable to discern any legislative authorization for the result of defendant's sentence, we must conclude that the sentence given was not valid.

In so holding, we disagree with *People v Martinez,* 147 Mich App 94; 382 NW2d 741 (1985), in which another panel of this Court concluded in part that a sentence of 100 to 150 years on an habitual offender charge given with the hope that defendant would never be released from prison was expressly authorized by statute and thus did not infringe upon the Legislature's powers, even though it effectively precluded parole. We also disagree with the similar holding in *People v Rodgers,* 30 Mich App 582, 584-585; 186 NW2d 840 (1971), which held that the effect on parole expectation of a sentence of ninety-nine to one hundred years was irrelevant.[1]

Having concluded that the Legislature has not authorized sentences for armed robbery convictions that are, in effect, life sentences without parole, we must then decide what sentences the Legislature has authorized. The armed robbery statute clearly allows a life sentence. In such a

---

[1] Such a sentence, of course, violates the two-thirds rule of *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972).

case, defendant would be eligible for parole in ten years. *Johnson, supra;* MCL 791.234(4); MSA 28.2304(4). The fact that defendant is eligible for parole does not mean that he has a right to parole. Cf. *Hurst v Dep't of Corrections, Parole Board,* 119 Mich App 25, 29; 325 NW2d 615 (1982) (early parole case). While the parole board is solely responsible for granting parole, MCL 791.235; MSA 28.2305, the parole board shall not grant parole until it has reasonable assurance that the prisoner will not become a menace to society or to public safety and has satisfactory evidence regarding arrangements for the prisoner's employment, education or care, if ill or incompetent, MCL 791.233(1)(a) and (d); MSA 28.2303(1) (a) and (d). In the case of prisoners serving nonmandatory life terms who are eligible for parole after ten years, parole shall not be granted if the sentencing judge or the judge's successor files written objections. MCL 791.234(4)(b); MSA 28.2304(4)(b). If trial judges could impose sentences of one hundred to three hundred years, they would take away from the parole board and from themselves or their successors the legislatively mandated duty to evaluate a prisoner periodically to see if the passage of time has made release a reasonable option. As we have indicated, the Legislature has removed this option for certain offenses. It has not yet done so in the case of armed robbery, however desirable such a course of action may or may not be.

The remaining possibility is a sentence "for any term of years." The meaning of "any term of years" has not been extensively analyzed in this precise context. Panels of this Court, however, have upheld many lengthy sentences. In *Martinez, supra,* the defendant was convicted of voluntary manslaughter and sentenced as an habitual offender under MCL 769.12; MSA 28.1084, which

authorizes a sentence for "life or for a lesser term" but also describes the latter sentence as one "for any term of years." *Martinez* approved the "long term of years" of 100 to 150 years, even though this sentence was obviously intended to exceed the defendant's life expectancy.

First-degree criminal sexual conduct is also punishable by a sentence "for life or for any term of years." MCL 750.520b(2); MSA 28.788(2)(2). Another panel of this Court in *People v Crawford,* 144 Mich App 86, 89; 372 NW2d 688 (1985), upheld concurrent sentences of 80 to 120 years for first-degree criminal sexual conduct, noting that

[f]rom a defendant's standpoint in viewing length of time to be served, there is no sentence more severe than a life sentence. A sentence of 80 to 120 years is almost certain to be longer than a defendant's life.

The Court in *Crawford* concluded that the purpose of the lengthy sentence was to recognize the heinous nature of the crime and tell the public that such conduct will not be tolerated. The Court was not prepared "to say that these equivalents of life sentences were an abuse of discretion" such as to shock the judicial conscience. 144 Mich App at 89-90.

In *Rodgers, supra* at 584-585, a panel of this Court affirmed a sentence of ninety-nine to one hundred years, holding that

"any term of years" means exactly that. The trial judge may sentence a defendant to any term of years and the fact that the term of years may result in a sentence which, in terms of parole, is greater than life is irrelevant.

We believe that these cases misconstrue the

phrase "any term of years." In *People v Blythe,*
417 Mich 430; 339 NW2d 399 (1983), the Supreme
Court considered whether the phrase "for any
term of years" in the armed robbery statute re-
quired imposition of a mandatory minimum sen-
tence. In determining that it did not, the Supreme
Court concluded that the phrase referred to the
maximum sentence to be imposed. 417 Mich at
434. In *Johnson, supra* at 497-498, the Supreme
Court wrote:

> The difference between a life sentence and an
> indeterminate sentence having a minimum and
> maximum term has been recognized by this Court
> since our decision in *People v Vitali,* 156 Mich 370;
> 120 NW 1003 (1909). We observed in *Vitali* that if
> a life sentence is imposed there can be no mini-
> mum term.
>
> Accordingly, when a statute authorizes the im-
> position of a sentence of "life or any term of
> years" it allows the imposition of a fixed sentence
> —life—or an indeterminate sentence—any number
> of years. We observed in *People v Blythe,* 417
> Mich 430, 434-435; 339 NW2d 399 (1983), that the
> Legislature viewed the phrase "life or any term of
> years" as descriptive of the maximum sentence
> only. The sentence concepts "life" and "any term
> of years" are mutually exclusive and a sentencing
> judge may (in the appropriate case) opt for either
> but not both.

If "life" and "any term of years" are mutually
exclusive concepts, the Court's statement that the
latter allows imposition of "any number of years"
must mean "any number of years *less than* life."

By definition, a person cannot serve a prison
sentence lasting longer than that person's life. A
life term is, as a matter of law, a greater penalty
than a term of years. *People v McNeal,* 156 Mich
App 379, 381; 401 NW2d 650 (1986); *People v*

*Lindsey,* 139 Mich App 412, 415; 362 NW2d 304 (1984). Therefore, it is meaningless for a person to receive a sentence longer than life. The phrase "any term of years" also cannot mean a time equal to life, as it would then be surplusage for the Legislature to have also provided for life sentences in the same statute.

All that remains, then, is a term of years less than life. In a very early case, *People v Murray,* 72 Mich 10, 16-17; 40 NW 29 (1888), the Supreme Court wrote:

> There is another feature of this case to which we wish to call special attention, and that relates to the sentence imposed. It is for 50 years, and will very likely reach beyond the natural life of the respondent, unrestrained of his liberty, and over-reach by 10 or 15 years his natural life if so restrained. We see nothing in this record warranting any such sentence, and it must be regarded as excessive. It will not do to say the executive may apply the remedy in such a case. We do not know what the executive may do, and it is but a poor commentary upon the judiciary when it becomes necessary for the executive to regulate the humanity of the bench.
>
> But the Constitution has not left the liberty of the citizen of any state entirely to the indiscretion or caprice of its judiciary, but enjoins upon all that unusual punishments shall not be inflicted. Where the punishment for an offense is for a term of years, to be fixed by the judge, it should never be made to extend beyond the average period of persons in prison life, which seldom exceeds 25 years.

Several subsequent cases have distinguished *Murray* as involving a fixed sentence at a time when the defendant was required to serve the sentence imposed unless pardoned, rather than the modern practice of indeterminate sentences. See,

e.g., *People v Burton,* 396 Mich 238, 243 n 9; 240
NW2d 239 (1976); *Rodgers, supra* at 585; *People v
Girard,* 18 Mich App 593, 595; 171 NW2d 567
(1969). We see little difference, however, between a
sentence "for a term of years, to be fixed by the
judge" which must be served fully and a lengthy
indeterminate sentence "for any term of years" of
which a defendant must serve the minimum less
disciplinary credits. Through the workings of pro-
posal B, defendant's sentence effectively precludes
any possibility of parole during his lifetime. Defen-
dant's situation is thus much like that of the
defendant in *Murray.*

*Murray*'s value lies not in the absolute numbers
it offers. Its recommendation of a twenty-five year
cap on the prison sentence of a twenty-three-year-
old defendant reflects the harshness of life when
the opinion was written. More important is *Mur-
ray*'s recognition that a sentence for a term of
years should consider a defendant's life expec-
tancy. An indeterminate sentence "for any term of
years" must be one for less than life and must
accordingly be fashioned with consideration of a
defendant's life expectancy at the time of sentenc-
ing as determined by the trial judge.[2]

---

[2] In *People v Fleming,* 428 Mich 408, 427; 410 NW2d 266 (1987), the
Supreme Court's majority opinion said in its footnote 24:

    The use of "good time credits" was considered in the Task
Force Report on Prison Overcrowding, n 9 *supra* [pp 419-420],
as part of the solution to overcrowding:
    "The overcrowded conditions of our state prisons affirm the
necessity for sentencing reform. During the past ten years, the
average length of prison terms in this state has risen from 22
months to in excess of 32 months. This dramatic increase in
sentence length, when coupled with the general increase in the
absolute number of commitments to the state system, is di-
rectly responsible for the majority of the overcrowding we are
now experiencing.
    "Thus the recommendations within this section address the
issue of sentencing. The first two recommendations directly

We note that even such a sentence must also consider the sentencing guidelines and the criteria required by *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983). While a sentence approaching a defendant's life expectancy might be appropriate and justified in many cases, such a sentence must be supported by adequate reasons on the record.

Defendant's convictions are affirmed, but we vacate defendant's sentence for armed robbery and remand for resentencing in accordance with this opinion.

M. J. KELLY, J., concurred.

R. L. TAHVONEN, J. *(dissenting).* I respectfully dissent.

The majority concludes that the sentence imposed by the trial court is invalid because the majority does "not believe the Legislature has authorized a sentence of one hundred to three hundred years in prison for the offense of armed robbery." My understanding of the law constrains me to disagree.

Mr. Moore was sentenced for armed robbery.

---

address sentencing reform, while the last addresses good-time credits that are applied to the minimum and maximum sentences of convicted offenders."

We note the similarity in factoring the OPEA and "good time" into a defendant's sentence to circumventing the parole provisions of the "lifer law," MCL 791.234(4); MSA 28.2304(4) by sentencing defendants to a term of years that exceeds life and precludes parole. A sentence of one or more centuries in prison violates the spirit and intent of the indeterminate sentencing statutes. The Legislature has recognized that a defendant may be rehabilitated in prison and has vested in the parole board the power to release a rehabilitated prisoner once the minimum sentence has been served. MCL 791.231 *et seq;* MSA 28.2301 *et seq.* Any changes in the parole provisions of the "lifer law" should be made by the Legislature, not the judiciary.

This was dicta but we find it persuasive.

The applicable statute provides that armed robbery is "punishable by imprisonment in the state prison for life or for any term of years." MCL 750.529; MSA 28.797. The trial court sentenced Mr. Moore to a term of one hundred to three hundred years in prison. The conclusion follows, with the force and simplicity of Aristotelian syllogism, that the sentence was within the maximum authorized by the Legislature.

The majority opinion avoids the snare of the obvious by reading the statute creatively. The law says that the sentence may be for "*any* term of years"; the majority reads "a term of years less than life." The law grants broad discretion to the trial bench to fashion an appropriate sentence; the majority restricts that authority on the basis of considerations extraneous to the statute. The law is clear; the majority's view obscure.

Of course, the majority purports to merely "construe" or "interpret" the statute to effectuate the Legislature's intent. However, the most fundamental rule of statutory construction is that, where a statute is clear and unambiguous, the judiciary's role is to enforce, not construe. The statute here is plain: a trial court may sentence for "life or any term of years." Any term of years means a term without limitation as to duration. The assertion that the term of years must be shorter than life expectancy because no one can serve more than life misses the mark. The issue is not whether the defendant can serve the sentence, but whether the court can impose it. Likewise, the existence of the lifer law, MCL 791.234(4); MSA 28.2304(4), may prompt long indeterminate sentences but certainly does not invalidate them. Finally, although the long and indeterminate sentence may in fact exceed a life sentence as served, that assumption is premised upon speculation alone. Notwithstanding

the lifer law, the inmate serving a life sentence perhaps will never be paroled. In fact, the lifer law itself may be repealed or amended. In short, the majority analysis is founded upon assumptions similar to those this Court expressly prohibits trial courts from making at sentencing. *People v Humble,* 146 Mich App 198; 379 NW2d 422 (1985), and *People v Fleming,* 142 Mich App 119, 126; 369 NW2d 499 (1985).

The majority suggests the Legislature can correct the problem by amending the statute. I suggest this Court can avoid the problem in the first place by simply applying the law as it is.

Because I am convinced judicial construction here is not warranted in the first instance, I will not discuss at length the construction adopted by the majority. It is enough to say that if "any term of years" cannot equal or exceed a particular defendant's life expectancy, every judge will be an actuary, every attorney will be a physician, and every defendant will be at death's door on sentencing day.

I would affirm.