*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
October 21, 2024
11:41 AM

Plaintiff-Appellee,

v

No. 366283
Livingston Circuit Court
LC No. 2022-027157-FH

JAYSON ANTHONY JONES,

Defendant-Appellant.

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Defendant, Jayson Anthony Jones, appeals as of right his jury-trial convictions of two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion used to accomplish sexual penetration). We affirm.

## I. FACTUAL BACKGROUND

The victim and defendant were married for 19 years and have two children together. Throughout the marriage, the couple sought guidance and support regarding their relationship from their church pastor. At trial, the victim testified that, generally speaking, her sex life with defendant was consensual, but told the jury about two instances of nonconsensual, anal intercourse that occurred during the marriage, before the couple divorced in 2019.

The victim testified that, in 2014, defendant asked the victim for sex and she agreed even though she was not interested. Defendant asked the victim to "get on all fours on the bed," and they had consensual vaginal intercourse in their bedroom. The victim testified that, during intercourse, defendant put his penis in the victim's anus without warning. According to the victim, defendant did not ask, she did not want him to do that, and it caused a horrible burn. The victim testified that she moved forward and told defendant, "No," but defendant grabbed her hips, pushed her back toward him, and continued to thrust. The victim described that, after defendant finished, she laid flat on the bed, dizzy and hurt, while defendant went into the bathroom and shut the door. The victim testified that, in the days following, she told defendant that she continued to hurt and experience bleeding and that she did not want him to "ever do that again." Defendant replied,

"Okay." The victim testified that she continued to have consensual vaginal intercourse with defendant during their marriage, but reluctantly.

The victim also testified about another incident, in 2016, when defendant again asked the victim for sex. According to the victim, she agreed, and they took their pants off. Defendant then asked for oral sex, and the victim agreed. During oral sex, defendant asked the victim to turn around and get "on all fours." The victim testified that, when she did, he put his penis in her vagina and pulled her into a somewhat sitting position. They had sex for "a while" in this manner until he pulled out, pushed her hips up, and pushed his penis inside her anus. The victim testified that she tried to move off of defendant, but moving was difficult because of her position. She testified that defendant then "put his arms around [her] chest and pulled [her] back down on top of him" so that she was lying on top of him with her back on his chest. She testified that he continued to thrust when she screamed and "said it hurts and please stop." The victim testified that, afterward, she told defendant that she "didn't want to do that again" and "that it hurt really bad."

The victim and the couple's church pastor both testified about a conversation that occurred between them and defendant in 2016, in which the victim raised the 2016 nonconsensual sex incident. The pastor testified that defendant told him that he did nothing wrong and that anything in the bedroom was allowable. The victim testified that during this conversation, defendant told the victim and their pastor that "he's allowed to do whatever he wants, and he will" because they were married. The victim testified that she continued to have vaginal intercourse with defendant because if she did not, "there would always be consequences."

The victim testified that she divorced defendant in 2019. She testified that, during their marriage, she had only told their pastor and his wife about defendant's conduct, and that she had been afraid to speak with law enforcement about it until after she received trauma counseling following the divorce. The victim denied that she had used the two incidents as a weapon in her divorce and custody dispute with defendant, or had made up the allegations as part of a vendetta or for some other reason. During cross-examination, defense counsel used documents from the parties' divorce and custody proceedings to refresh the victim's memory regarding certain dates and the contents of certain filings.

## II. PROCEDURAL BACKGROUND

At the end of the first day of trial, the prosecution rested its case, and the jury was excused for the day at around 4:30 pm. Less than five minutes after resting its case, the prosecution stated, "Your Honor, it occurs to me I had one more witness I'd like to put on. I know I stated on the record the People rest. But I would like to call [the interviewing state trooper] in the morning[,] if possible." The trial court stated, "Okay," and there were no objections placed on the record at the time.

The following morning, the trial court stated its understanding that the prosecution had moved to reopen the proofs. The prosecution stated:

Yes, your Honor. Specifically[,] [defense counsel] handed me several documents from a divorce case in the middle of trial yesterday and confronted the complaining

witness with them at the bench. Not having ample time to review those documents thoroughly because it was handed to me last minute, I now want to—

The trial court and defense counsel interrupted, and a discussion ensued regarding the admissibility of the documents as exhibits. The trial court overruled defendant's objection to admitting the exhibits. Defense counsel then argued that by moving to reopen the proofs, the prosecution was attempting to gloss over the fact that it had forgotten to establish venue during its case-in-chief. The prosecution acknowledged that it had forgotten to establish venue but argued that caselaw also supported reopening the proofs to allow the prosecution to more thoroughly examine the documents used by the defense on the first day of trial. The prosecution also explained that it could establish venue in the course of recalling the victim to testify about the documents, obviating the need to call the interviewing officer.

Defendant then moved for a directed verdict on the ground that the prosecution had not established venue. The trial court ultimately ruled that it would allow the prosecution to reopen the proofs, noting that the proceedings had not advanced between when the prosecution rested and moved to reopen the proofs and that defendant was not surprised or prejudiced by evidence of proper venue. The trial court subsequently denied defendant's motion for a directed verdict.

The victim was recalled at the start of trial on the second day. She authenticated the documents related to her prior civil cases, which were admitted as exhibits. The victim clarified some terminology and details about the prior civil cases for the jury, and stated that the assaults took place in Brighton, Michigan, which is in Livingston County. The defense offered no witnesses before resting.

The jury found defendant guilty on both counts of CSC-III. Defendant now appeals, arguing that there was insufficient evidence to support his convictions and that the trial court erred by granting the prosecution's motion to reopen the proofs and denying his motion for directed verdict.

## II. DISCUSSION

### A. SUFFICIENT EVIDENCE OF FORCE OR COERCION

Defendant contends that the prosecution presented insufficient evidence to establish the elements of third-degree criminal sexual conduct. We disagree.

In determining whether sufficient evidence exists to sustain a conviction, this Court "reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). The standard of review is deferential, meaning this Court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. *Id*. It is for the trier of fact, not this Court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. *Id*. "However, a reviewing court only defers to a jury on questions of fact; it does not defer on questions of law," which are reviewed de novo. *People v Prude*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165664); slip op at 5-6.

Relevant here, a defendant is guilty of CSC-III if "(1) defendant engaged in sexual penetration with the victim, and (2) force or coercion is used to accomplish the sexual penetration." *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012), quoting MCL 750.520d(l)(b) (quotation marks and brackets omitted). The existence of force or coercion is to be determined in light of all the circumstances. *People v Crippen*, 242 Mich App 278, 282; 617 NW2d 760 (2000). Force or coercion includes, but is not limited to, circumstances in which the actor overcomes the victim through the actual application of physical force or physical violence, and circumstances in which the actor is able to overcome the victim through concealment or by the element of surprise. MCL 750.520b(1)(f)(*i*) and (*v*). "[T]he prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002). Further, for purposes of CSC-III, "[a] victim need not resist the actor," MCL 750.520i, and "[t]he testimony of a victim need not be corroborated," MCL 750.520h.

When considering the totality of the circumstances in this case in the light most favorable to the prosecution, we conclude that there was sufficient evidence to support defendant's convictions on both counts. With regard to the count stemming from the 2014 incident, the victim testified that she did not consent to having anal intercourse with defendant and that, after he put his penis in her anus, the victim pulled forward and told him "no." The victim testified that defendant then grabbed her hips, pushed her back on to him, pushed down hard on the bottom of her back with his hand and continued to thrust. Likewise, with regard to the count stemming from the 2016 incident, the victim testified that when defendant put his penis in her anus she screamed and said "it hurts and please stop." The victim testified that she tried move off of defendant but was unable to and that defendant put his arms around her chest, pulled her back down on top of him, and continued to thrust until he ejaculated. The victim's testimony was sufficient to establish that defendant used the application of physical force "to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes." *Carlson*, 466 Mich at 140.

Defendant presented no evidence that contradicted the victim's testimony. Rather, at trial, defendant's focus was on attempting to impeach the victim's credibility by suggesting that she complained to law enforcement about defendant's conduct in order to improve her position in their custody dispute. The jury, however, apparently found the victim credible, and it is not the role of this Court to "determine the weight of the evidence or the credibility of witnesses." *Eisen*, 296 Mich App at 331 (quotation marks and citation omitted).

Defendant argues that the testimony did not adequately distinguish between the consensual and nonconsensual sexual acts. But as discussed, the victim testified that, while both incidents involved consensual vaginal intercourse, during both instances, she verbalized her non-consent to anal intercourse and defendant ignored her, holding onto her and continuing to anally penetrate her despite her protestations. Accordingly, there is sufficient evidence from which a jury could reasonably conclude beyond a reasonable doubt that defendant engaged in sexual penetration with the victim through the use of force or coercion in both 2014 and 2016.

## B. REOPENING THE PROOFS

Defendant contends that the trial court erred by granting the prosecution's motion to reopen the proofs to allow the prosecution to provide proof of venue, and that the error prejudiced defendant. Defendant further argues that, had the trial court not erred, it would have granted defendant's subsequent motion for a directed verdict. We disagree.

A trial court's decision to reopen the proofs is reviewed for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001). A trial court abuses its discretion when its decision "falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." *Herndon*, 246 Mich App at 420 (quotation marks and citation omitted). See also *People v Moore*, 164 Mich App 378, 383; 417 NW2d 508 (1987) (factors pertinent to a trial court's decision to reopen the proofs "include whether conditions have changed or undue advantage would result, whether newly discovered and material evidence is sought to be admitted, whether surprise would result, and the timing of the motion during the trial"), mod and remanded on other grounds 433 Mich 851 (1989).[1]

A trial court's decision on a motion for directed verdict is reviewed de novo. *People v Martin*, 271 Mich App 280, 319; 721 NW2d 815 (2006). A defendant may move for a directed verdict of acquittal after the prosecution has rested its case-in-chief or after the close of all evidence. MCR 6.419(A).

The trial court did not abuse its discretion by granting the prosecution's motion to reopen the proofs. Mere minutes passed between the prosecution resting and informing the trial court of the need to call an additional witness. During those minutes, the jury was dismissed, but the record indicates that the trial court always intended to dismiss the jury at that time, regardless of whether the prosecution had rested or not. The timing of the motion is such that defendant cannot show any surprise or prejudice as result of the trial court reopening the proofs. *Herndon*, 246 Mich App at 420. Nor did the timing of the prosecution's motion result in any undue delay or inconvenience. *Moore*, 164 Mich App at 383. The trial had not advanced in any material way before the proofs were reopened. For the same reasons, the prosecution did not obtain any undue advantage. The prosecution merely made a mistake that was immediately raised and easily corrected. See, e.g., *People v Keeth*, 193 Mich App 555, 561; 484 NW2d 761 (1992) (trial court did not abuse its discretion by allowing the prosecution to reopen the proofs when it realized there was no stipulation as to the identification of the defendants on the record, requiring additional witness testimony to establish their identity).

Defendant argues that there was no legitimate reason to reopen the proofs because the prosecution's stated purpose for doing so—to examine the victim regarding the documents defense

---

[1] Although Court of Appeals opinions dated before November 1, 1990, are not precedentially binding, they may be considered for their persuasive value. MCR 7.215(J)(1); *People v Urbanski*, ___ Mich App ___, ___ n 5; ___ NW3d ___ (2023) (Docket No. 359011); slip op at 9 n 5. Both parties cite *Moore* in their briefs on appeal.

counsel used to refresh her memory—was merely a pretext for reopening the proofs in order to establish venue. But the record indicates that the prosecution always intended to move to reopen the proofs based on the need to establish venue. The prosecution initially informed the trial court that it needed to call the interviewing officer. The officer was never called, however, because the prosecution could establish venue by recalling the victim, while also examining the victim regarding the documents.

The trial court did not abuse its discretion by granting the prosecution's motion to reopen the proofs. And because the trial court did not err by granting the motion, it correctly denied defendant's motion for directed verdict.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani