# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 3, 2015

Plaintiff-Appellee,

v

No. 317351
St. Clair Circuit Court
LC No. 11-002643-FH

SHANE MICHAEL STUDIER,

Defendant-Appellant.

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree home invasion, MCL 750.110a(2), unlawful imprisonment, MCL 750.349b, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, domestic violence (third offense), MCL 750.81(4), and torture, MCL 750.85. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 26 years and 8 months to 80 years for the unlawful imprisonment and AWIGBH convictions, 7 to 15 years for the domestic violence conviction, and 50 to 80 years for the torture conviction, to be served consecutive to an additional prison term of 26 years and 8 months to 80 years for the home invasion conviction. We affirm.

## I. FACTS AND PROCEEDINGS

Defendant's convictions arise from a series of events beginning early in the morning and continuing into the early afternoon of October 15, 2011. At approximately 5:30 a.m., defendant arrived at the aparment of his estranged wife (the "victim"). Defendant had a history of domestic violence against the victim. The victim refused to let defendant inside her apartment, but defendant kicked open the door and forced his way inside. Once inside the apartment, defendant repeatedly assaulted the victim until they left the apartment around dawn. He repeatedly struck her in the face, choked her with his hands, kicked her in the groin area, pushed her to the floor, and kicked her in the face. He also threatened her with both a steak knife and a two-pronged fork, holding both objects to her throat and threatening to kill her. Throughout this time, defendant verbally abused the victim, called her a "whore," and blamed her for the problems in the couple's relationship.

Defendant eventually told the victim that he was not going to work that day and was taking her to his mother's house where he also lived, because he did not want her to call the police. The victim collected her 10-month-old child and walked with defendant to his truck. She

-1-

did not attempt to run from him at this time, explaining that defendant would catch her and she was afraid that defendant would hurt her more. When defendant stopped at a gas station, the victim asked defendant to buy her some water so she could take medication for her pain. She did not try to leave the truck or summon help while at the gas station, explaining that she did not have time to retrieve her 10-month-old child from the vehicle before defendant could get to her, and she was afraid of defendant and did not want to do anything to provoke him more. Defendant arrived at his mother's house and brought the victim to his bedroom. When the victim heard defendant's mother, Diana Gundlach, ask defendant where the victim was, the victim did not attempt to call out for help. The victim eventually fell asleep in defendant's bedroom. Gundlach left for work, but suspected that something was wrong, so she went to the police station and asked the police to check her house. When the police arrived, they discovered the victim inside defendant's bedroom. She had visible injuries and was transported to a hospital for treatment.

Before trial, defendant entered into a plea agreement whereby he pleaded guilty to domestic violence, home invasion, AWIGBH, and wrongful imprisonment, and the prosecutor agreed to request a minimum sentence of no longer than 15 years. At sentencing, the trial court stated that it could not limit defendant's sentence to 15 years, and gave defendant the opportunity to withdraw his plea. Defendant withdrew his plea against counsel's advice. The trial court thereafter allowed defense counsel to withdraw, but declined to adjourn the scheduled trial, which was scheduled to begin in approximately six weeks. Defendant promptly obtained new counsel, who unsuccessfully moved for an adjournment of trial.

Defense counsel's theory at trial was that defendant might have been guilty of aggravated assault and domestic violence, but was not guilty of the elevated charges. The defense attempted to demonstrate that the situation was not as serious as the prosecution alleged, and that the victim was never imprisoned or unlawfully restrained because she had several opportunities to leave or summon help, but never did. At trial, the victim testified that her relationship with defendant involved a history of domestic abuse and violence, which eventually caused her to move away and obtain her own apartment. In addition to the victim's testimony, the prosecutor presented Megan Widman, an expert in domestic violence and its effects. Widman testified that during or after an assault, a victim of domestic violence might go along with what the abuser is telling or asking them to do, "[b]ecause if they don't, they know they can be hurt even worse." As noted earlier, the jury convicted defendant of first-degree home invasion, unlawful imprisonment, AWIGBH, domestic violence, and torture.

## II. JUDICIAL DISQUALIFICATION

Defendant first argues that the trial could erred by denying his motion to disqualify the trial judge, which was made on the last day of trial. Defendant argues that the trial court's conduct and comments during trial, and critical comments regarding defense counsel's untimely submission of proposed jury instructions, demonstrated that the court was biased against defendant or his attorney. "When this Court reviews a decision on a motion to disqualify a judge, the trial court's findings of fact are reviewed for an abuse of discretion, while the application of the facts to the relevant law is reviewed de novo." *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999). An abuse of discretion occurs when the decision is outside the

range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

A defendant has the right to a fair and impartial trial under both the United States and Michigan Constitutions. See US Const, Am VI; Const 1963, art 1, § 20. This right is violated when the trial court's conduct "pierces the veil of judicial impartiality." *People v Conley*, 270 Mich App 301, 307–308; 715 NW2d 377 (2006). MCR 2.003(C)(1) provides the following pertinent grounds for disqualifying a judge:

> (a) The judge is biased or prejudiced for or against a party or attorney.

> (b) The judge, based on objective and reasonable perceptions, has either (*i*) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556] US [868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (*ii*) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct.

"A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citations and internal quotations omitted). Disqualification is generally not warranted absent a showing of actual bias or prejudice. *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009). Although "a trial judge has wide discretion and power in matters of trial conduct," a trial court pierces the veil of judicial impartiality when its conduct or comments are "of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *Jackson*, 292 Mich App at 598 (citations and internal quotations omitted). In reviewing challenged remarks, "[p]ortions of the record should not be taken out of context in order to show trial court bias against defendant; rather the record should be reviewed as a whole." *People v Paquette*, 214 Mich App 336, 340, 543 NW2d 342 (1995).

The trial court's e-mails criticizing defense counsel reflect the court's frustration that the proposed jury instructions were submitted at an inconvenient time, but comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Jackson*, 292 Mich App at 598. The trial court's explanation that it was frustrated with the delay in receiving the proposed instructions is consistent with the context in which the e-mails were exchanged. The court did not vent its frustration in the presence of the jury. These comments are insufficient to overcome the presumption of impartiality.

Similarly, the trial court's comment that defense counsel had apparently "set up" the question about the victim's alleged illegal conduct before the trial court addressed the Fifth Amendment issue, and its comment that defense counsel was engaging in "grandstanding" and taking "marching orders" from defendant or his family, revealed exasperation that defense counsel was pushing boundaries instead of complying in good faith with the court's procedures and rulings. A judge's opinions or judicial rulings are not valid grounds for alleging bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id.* (citations and internal quotations omitted). The comments here, considered in context, do not rise to a level of deep-seated bias or antagonism against defense counsel or

defendant.  The court did not abuse its discretion by finding that there was no factual basis for defendant's motion for disqualification.

Defendant argues that if he failed to establish actual bias, judicial disqualification was warranted on the ground that the court gave the appearance of bias.  He relies on *Caperton v Massey*, 556 US 868; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), the case cited in MCR 2.003(C)(1)(b).  The circumstances of this case are not comparable to *Caperton*, which involved a party's substantial monetary contributions to a judge's election campaign.  Unlike in *Caperton*, there was no evidence of extra-judicial influences that might affect the trial judge's ability to act impartially, or would give rise to an appearance of bias or impropriety.  The trial court's various remarks, considered in the context in which they were made, were understandable reflections on defense counsel's tactics during trial.  Most of the challenged conduct occurred outside the jury's presence.  Defendant has not demonstrated that his due process rights were violated by judicial bias or partiality.

### III.  MOTION FOR MISTRIAL

Defendant next argues that the trial court erred by denying his motion for a mistrial after some jurors might have seen him in handcuffs while deputies were escorting him in a courthouse hallway.  "We review for an abuse of discretion a trial court's decision regarding a motion for a mistrial."  *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).  We review for clear error the trial court's findings of fact.  MCR 2.613(C).  A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to obtain a fair trial.  *Schaw*, 288 Mich at 236.

The federal constitution prohibits the use of visible shackles during trial unless the use is justified by an essential state interest, such as courtroom security, which is specific to the defendant on trial.  *Deck v Missouri*, 544 US 622, 624; 125 S Ct 2007; 161 L Ed 2d 953 (2005), abrogated in part on other grounds in *Fry v Pliler*, 551 US 112; 127 S Ct 2321; 168 L Ed 2d 16 (2007).  Freedom from shackling of a defendant during trial is viewed as an important component of a fair and impartial trial.  *People v Duplissey*, 380 Mich 100, 103; 155 NW2d 850 (1968); *People v Moore*, 164 Mich App 378, 384-385; 417 NW2d 508 (1987), rev'd in part on other grounds 433 Mich 851 (1989).  When a jury inadvertently sees a shackled defendant, a defendant is not entitled to relief absent a showing of prejudice.  *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009); *Moore*, 164 Mich App 378.

The trial court was notified that some jurors may have briefly observed defendant in handcuffs during an encounter when deputies were escorting defendant through a hallway outside the courtroom.  The trial court investigated the matter and four jurors indicated that they briefly encountered defendant outside the courtroom when he was standing with two officers.  The jurors were asked if they saw anything that concerned them, and none did.  One juror commented that the incident was so brief that she "wouldn't even call it an encounter."  The trial court determined that there was no basis for finding that defendant was prejudiced by the brief encounter.  We agree.

Initially, it is not certain that any juror actually saw the handcuffs.  A defendant is not prejudiced if the jury is unable to see the restraints on the defendant.  *People v Dunn*, 446 Mich

409, 424-425; 521 NW2d 255 (1994); *Payne*, 285 Mich App 181, 186. Even if a juror did observe defendant in handcuffs, however, because the incident was brief and inadvertent, occurred outside the courtroom setting, see *Moore*, 164 Mich App at 384-385 (freedom from shackling does not extend to circumstances in which a defendant may be shackled outside a courtroom), and involved only four jurors who all stated that they did not observe anything that concerned them, defendant was not prejudiced by the brief encounter. This case is factually distinguishable from *People v Banks*, 249 Mich App 247, 256-257; 642 NW2d 351 (2002), cited by defendant. *Banks* involved visible restraints on a crucial witness throughout the witness's testimony at trial. The trial court correctly determined that the brief encounter that occurred here did not establish the necessary prejudice requiring a mistrial.

## IV. IMPROPER EXPERT TESTIMONY

Defendant next argues that reversal is required because Megan Widman, a prosecution expert on domestic violence and its affects, was improperly allowed to testify that false accusations by domestic-violence victims are "exceedingly rare" or "pretty rare." Because defendant did not object to this testimony at trial, this issue is not preserved. MRE 103(a)(1). Accordingly, to be entitled to appellate relief, defendant has the burden of establishing a plain error that affected his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Widman properly could offer testimony regarding the uniqueness of specific behaviors of domestic violence victims that were relevant and helpful to an understanding of the evidence at trial. See *People v Christel*, 449 Mich 578, 590-591; 537 NW2d 194 (1995). However, she was not permitted to offer an opinion concerning whether the victim was actually abused, whether defendant was guilty, or whether the victim was truthful. *Id.* at 591. We agree with defendant that Widman's testimony that it was "pretty rare" and "exceedingly rare" for a domestic violence victim to fabricate allegations of physical abuse was problematic. This limited testimony did not explain anything pertinent to the alleged incident or explain any behavior relevant to any material issue in the case. Conversely, however, other aspects of Widman's testimony were relevant and admissible to explain the victim's behavior in cooperating with defendant when he removed her from her apartment and took her to Gundlach's house, and to explain why the victim did not take advantage of possible opportunities to escape or ask for help.

To the extent that the challenged portion of Widman's testimony was improper, it did not affect defendant's substantial rights. The testimony addressed the credibility of a domestic violence victim's allegations of physical abuse. Defendant did not advance a theory that the victim was fabricating her allegations, and he did not deny assaulting the victim. Rather, the defense theory at trial was that the evidence did not support the greater charges of AWIGBH, torture, and wrongful imprisonment. Moreover, overwhelming evidence of the nature and extent of the victim's physical injuries was presented at trial, independent of the victim's testimony. Numerous photos of the victim's injuries were presented, as well as her medical records, testimony from witnesses who observed the victim shortly after her ordeal ended, and testimony from the doctor who treated the victim at the hospital. The jury had no reason to rely on Widman's testimony to find that the victim's accusations of physical abuse were credible. Moreover, Widman made clear in her testimony that she was only offering her general knowledge of domestic violence. She acknowledged that she was not testifying that defendant

was guilty, that the victim was actually a victim of domestic violence, or about anything specific to the case. Under these circumstances, Widman's limited improper testimony did not affect defendant's substantial rights.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his convictions of torture and wrongful imprisonment. This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of a crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).

The offense of torture is proscribed by MCL 750.85(1), which provides:

A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.

The elements of torture include: (1) the intent to cause cruel or extreme physical or mental pain and suffering; (2) the infliction of great bodily injury or severe mental pain or suffering upon another person; and (3) the victim is within the actor's custody or physical control. Defendant only challenges the third element, whether the victim was within defendant's custody or physical control when the injuries were inflicted. The statute defines "custody or physical control" as "the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority." MCL 750.85(2)(b).

MCL 750.349b(1) provides that "[a] person commits the crime of unlawful imprisonment if he or she knowingly restrains another person" under any of the following circumstances:

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony.

Again, defendant argues that the evidence was insufficient to show that the victim was unlawfully restrained.

Defendant argues that there was insufficient evidence to prove that he forcibly restricted or confined the victim because the evidence showed (1) that the victim had opportunities to leave

-6-

her apartment before and after defendant arrived there, (2) that the victim was free to leave defendant's truck at the gas station, and (3) that the victim was free to leave Gundlach's house after arriving there. Defendant also argues that the evidence did not support a finding that he secretly confined the victim at Gundlach's house, a circumstance under which unlawful imprisonment may be committed, because other people were present at the house, and because Gundlach contacted the police, thereby indicating that she knew the victim was there.

It was the prosecutor's theory that the conduct supporting the torture charge began after defendant arrived at the victim's apartment. Thus, it is immaterial whether the victim could have left her apartment before defendant arrived. A determination whether defendant forcibly restricted or confined the victim must instead be evaluated by examining the evidence of defendant's conduct after he arrived at the apartment. We disagree with defendant's argument that evidence showing that the victim had opportunities to leave precluded the jury from finding that she was forcibly restrained or confined. The evidence indicated that defendant repeatedly physically abused the victim after entering her apartment. During the assaults, he threatened her verbally and held both a two-pronged fork and a steak knife to her throat. The victim testified that she did not feel free to leave the apartment because she was afraid that defendant would come after her. When defendant told her that she would have to come with him to his mother's house, she did not believe she had a choice in the matter. The victim testified that she did not attempt to escape at the gas station because it would have taken her too long to get herself and her infant child out of defendant's truck. She did not seek help from other persons at the gas station because she was afraid of defendant, and had difficult seeing because her eyes were so swollen. Widman testified that domestic violence victims often try to protect themselves by submitting to their abuser's demands. The jury could have reasonably inferred from the evidence that the victim did not feel free to leave because of defendant's repeated physical assaults and continuous verbal abuse and threats, which caused the victim to believe that she could not safely escape and that any such attempt would only provoke defendant further. The evidence was sufficient to allow the jury to find that defendant forcibly restricted or confined the victim to his custody through his continued course of physical, abusive, and threatening conduct.

Regarding the unlawful imprisonment charge, defendant argues that the evidence did not allow the jury to find that the victim was secretly confined at Gundlach's house because others were present and because Gundlach alerted the police to her presence at the house. Although Gundlach contacted the police, defendant did not know this. According to the victim, defendant told her that he was taking her to Gundlach's house to prevent her from contacting the police. This evidence allowed the jury to find that defendant sought to confine the victim at Gundlach's house to avoid detection. Furthermore, unlawful imprisonment is also established if the actor knowingly restrains another person by means of a weapon or dangerous instrument. The evidence that defendant threatened the victim with a two-prong fork and steak knife while at the victim's apartment supported a finding of guilt under this theory. In sum, the evidence was sufficient to support defendant's convictions for torture and unlawful imprisonment.

## VI. SENTENCING

## A. JUDICIAL FACT-FINDING AT SENTENCING

Defendant argues that the trial court impermissibly relied on facts not found by the jury to score the sentencing guidelines, contrary to *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). We disagree. In *Alleyne*, the United States Supreme Court held that facts that increase a mandatory minimum sentence must "be submitted to a jury and found beyond a reasonable doubt." *Id.* at 2163. However, this Court has held that *Alleyne* does not implicate Michigan's sentencing scheme because judicial fact-finding within the context of Michigan's sentencing guidelines is not used to establish the mandatory minimum floor of a sentencing range. *People v Galloway*, ___ Mich App ___; ___ NW2d ___ (2014) (Docket No. 316262, issued October 7, 2014), slip op at 11; *People v Herron*, 303 Mich App 392, 403; 845 NW2d 533 (2013). Accordingly, we reject this claim of error.

## B. SCORING OF OFFENSE VARIABLE 8

Defendant argues that the trial court erred by assessing 15 points for offense variable (OV) 8. We note that the trial court scored the guidelines for both the home invasion and torture convictions, and that a 15-point reduction in defendant's total offense variables scores will not affect his placement in OV Level VI, the highest level of offense severity, for both offenses. Because any scoring error will not affect the appropriate guidelines range, defendant would not be entitled to resentencing even if OV was erroneously scored. *People v Francisco*, 474 Mich 82, 89-90 n 8; 711 NW2d 44 (2006).

Regardless, the trial court did not clearly err by finding that a preponderance of the evidence supported a score of 15 points for OV 8. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). A trial court may assess 15 points for OV 8 where "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). The evidence indicated that defendant took the victim to his house, in lieu of leaving her at her apartment, to prevent her from contacting the police. Although defendant's mother and brother also lived at the house, the fact that defendant took the victim to another location that he believed would reduce the likelihood that she would be able to summon help was sufficient to establish that he was taking her to a place of greater danger. Furthermore, as the trial court also observed, by taking the victim to his house and confining her to his bedroom, defendant also held her captive beyond the time necessary to commit the offenses, a fact that independently supports a 15-point score for OV 8.

## C. VINDICTIVENESS

Defendant also argues that the trial court's imposition of sentences substantially longer than the sentences the prosecution had originally agreed to request, and longer than the sentences the trial court was prepared to impose before defendant withdrew his prior guilty pleas, establishes that the sentences were impermissibly vindictive, imposed as punishment for his withdrawal of his pleas and exercise of his right to a trial. We disagree.

A presumption of vindictiveness arises "[w]hen a defendant is resentenced by the same judge and the second sentence imposed is longer than the first." *People v Colon*, 250 Mich App 59, 66; 644 NW2d 790 (2002). "[T]he presumption of vindictiveness may be overcome only when the extent of the increase in the sentence bears a reasonable relationship to . . . new

information." *People v Mazzie*, 429 Mich 29, 36; 413 NW2d 1 (1987). The presumption of vindictiveness is not applicable, however, where a sentence imposed after a trial is greater than one previously imposed in connection with a prior guilty plea. As the United States Supreme Court explained in *Alabama v Smith*, 490 US 794, 801; 109 S Ct 2201; 104 L Ed 2d 865 (1989):

> [W]hen a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge. Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial.

Defendant does not cite any evidence suggesting that the trial court sought to punish him for withdrawing his prior guilty pleas and proceeding to trial. Before withdrawing his pleas, defendant would have been sentenced for domestic violence, first-degree home invasion, unlawful imprisonment, and AWIGBH. After trial, he was sentenced for these offenses and also for torture. Moreover, the relevant information available to the trial court was significantly expanded by the trial testimony. At sentencing, the court explained:

> I . . . sat through . . . approximately seven hours of testimony and I learned facts from [the victim] of which I had not previously been appraised. I had the opportunity at that time to appreciate the full impact of this behavior on her . . . and part of that included the history of the relationship that was presented at the time of trial about which I had not heard in great detail before that—and which I did not fully appreciate before that. I also learned the true brutality of the crimes that were committed. . . .

> After hearing the testimony at trial, I can say without reservation that it was more brutal than I thought. Much more. It was chilling. . . .

> I have also since the time of the trial been given a feel for what people who . . . have had contact over the years with [defendant] have—well, I've been—let's put it this way . . . the comment was made to me more than once that: We did everything we could for him. We put him in every program possible and nothing helped.

> [W]hen I read [the victim's] Victim Impact Statement to which I did not have access before I'd read the Pre-Sentence Report, I found that chilling as well.

In sum, there is no presumption of vindictiveness, and considering the absence of any evidence suggesting that the trial court sought to punish defendant for withdrawing his prior guilty pleas and proceeding to trial, and the court's comments referencing the new information it learned during and after trial, defendant has also failed to make a showing of actual vindictiveness.

## VII. DEFENDANT'S SUPPLEMENTAL BRIEF

Defendant raises additional issues in a supplemental brief filed *in propria persona*. We disagree with each of defendant's additional claims.

## A. ADJOURNMENT

Defendant argues that the trial court erred by denying his motion for an adjournment to allow his new attorney more time to prepare for trial. We review a trial court's decision on a motion for an adjournment for an abuse of discretion. *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003). "No adjournments, continuances or delays of criminal causes shall be granted by any court except for good cause shown in the manner provided by law for adjournments, continuances and delays in the trial of civil causes in courts of records." MCL 768.2. In reviewing a trial court's denial of an adjournment, this Court considers whether the defendant asserted a constitutional right, whether there was a legitimate reason for asserting the right, whether previous adjournments were requested, and whether the defendant was negligent. *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). The defendant must show prejudice as a result of the court's denial of an adjournment. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

Here, defendant did not assert a constitutional right. The trial court found that there had been prior delays of trial to accommodate defendant's previous requests for forensic evaluations to determine criminal responsibility and competency to stand trial. These factors militate against an adjournment. A factor favoring adjournment was that original defense counsel was permitted to withdraw without defendant's consent. But the weight of this factor depends on whether defendant had sufficient time to find new counsel, and whether new counsel had sufficient time to prepare for trial. This consideration is also relevant to whether defendant was prejudiced by the denial of his request for an adjournment.

Defendant was able to obtain new counsel more than a month before the scheduled trial date. This left adequate time for new counsel to prepare for trial. There is no indication that new counsel was unprepared to try the case or prejudiced in his ability to present a defense; nor has there been any showing that counsel would have been more effective with more time to prepare. Defendant asserts that he was prejudiced because counsel did not call him to testify. However, defendant does not explain how the strategic decision whether to have defendant testify was affected by the trial court's denial of an adjournment. Defendant has failed to demonstrate that the trial court abused its discretion by denying his motion for an adjournment, or that he was prejudiced by the denial.

## B. COMPETENCY EVALUATION

Defendant argues that the trial court erred by denying his motion for a referral for a forensic evaluation to determine his competency to stand trial. We review the trial court's decision for an abuse of discretion. *People v Freeman (After Remand)*, 406 Mich 514, 516; 280 NW2d 446 (1979); *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990).

The conviction of an accused while he is incompetent to stand trial violates due process. *People v Newton*, 179 Mich App 484, 487; 446 NW2d 487 (1989). "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature

and object of the proceedings against him or the court determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000). "Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by personnel of either the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of incompetence to stand trial." MCL 330.2026(1). "The issue of the defendant's competence to stand trial or to participate in other criminal proceedings may be raised at any time during the proceedings against the defendant." MCR 6.125(B).

The trial court had already referred defendant for a competency evaluation early in the proceedings, after his counsel reported that defendant had made a suicide attempt and was "semi-delusional" and hearing voices. Following an examination, defendant was found competent to stand trial. Defense counsel later requested a second competency evaluation after another suicide attempt by defendant. The suicide attempt was the only factual basis for the request. Although a suicide attempt reflects a desire for death, it does not equate with an inability to understand the proceedings or assist in a defense. In light of the previous determination that defendant was competent to stand trial, and the absence of any further showing that defendant's mental condition prevented him from understanding the nature and object of the proceedings against him, or assisting in his defense, the trial court did not abuse its discretion by denying defendant's request for a second competency evaluation.

## C. ADMISSIBILITY OF PHOTOGRAPHS

Defendant argues that he was prejudiced by the admission of a large number of photographs depicting the victim's injuries. He does not dispute that the photos were relevant, but argues that their prejudicial effect outweighed any probative value, and that the large number of cumulative photos had no apparent purpose other than to elicit sympathy for the victim and inflame the jury against defendant. We disagree.

We review the trial court's decision to admit evidence for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). Evidence, although relevant, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403. " 'Photographs that are merely calculated to arouse the sympathies or prejudices of the jury are properly excluded, particularly if they are not substantially necessary or instructive to show material facts or conditions.' " *People v Eddington*, 387 Mich 551, 562; 198 NW2d 297 (1972) (citation omitted). "However, if photographs are otherwise admissible for a proper purpose, they are not rendered inadmissible merely because they bring vividly to the jurors the details of a gruesome or shocking accident or crime, even though they may tend to arouse the passion or prejudice of the jurors." *Id.* at 562-563.

The prosecutor attached 67 photographs to its response to defendant's motion to exclude photographic evidence. Most of the photos depict the crime scene. Only 15 were photos of the victim. The latter photos were not unnecessarily cumulative because they included facial close-ups taken from different angles, emphasized different features, and showed different stages of bruise formation. Although defendant argues that the photos were unnecessary because medical experts testified regarding the victim's injuries, photos may be used to corroborate a witness's testimony, and are not excludable merely because a witness can orally testify concerning the

information contained in the photographs.  *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995).

The defense strategy at trial was to downplay the seriousness of the events and the victim's injuries.  The photos were probative of these issues, and they were particularly relevant to the torture charge, which required the prosecution to prove that defendant intended to cause cruel or extreme physical or mental pain and suffering, and actually inflicted great bodily injury upon another person.  MCL 750.85(1).  The photographs are clearly probative of the duration and severity of defendant's abuse.  The trial court did not abuse its discretion by admitting the photographs.

## D.  EVIDENCE OF PRIOR BAD ACTS

Defendant lastly argues that evidence of his prior acts of domestic violence against the victim was inadmissible under MRE 404(b)(1), which prohibits "evidence of other crimes, wrongs, or acts" to prove a defendant's character or propensity to commit the charged crime.  However, such evidence was admissible under MCL 768.27b, notwithstanding MRE 404(b)(1).  The statute provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403."  MCL 768.27b(1).  Unlike MRE 404(b)(1), the statute permits evidence of prior domestic violence in order to show a defendant's character or propensity to commit the same act.  *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010).  Accordingly, the evidence was admissible under MCL 768.27b, independent of MRE 404(b)(1).

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Talbot
/s/ Deborah A. Servitto