*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

BRUCE H. ZITKA,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2020

No. 349491
Ingham Circuit Court
LC No. 17-000105-FH

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

SUSAN K. HERNANDEZ-ZITKA,

        Defendant-Appellant.

No. 349494
Ingham Circuit Court
LC No. 17-000102-FH

Before: MARKEY, P.J., and METER and GADOLA, JJ.

PER CURIAM.

        Defendants Bruce H. Zitka and Susan K. Hernandez-Zitka[1] each appeal as of right their convictions, following a joint jury trial, of three counts of conducting an unlicensed gambling operation, MCL 432.218(1)(a), and three counts of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(e). The trial court sentenced both defendants to five years' probation, with one year to be served in jail, subject to suspension upon successful completion of probation. In both appeals, we affirm.

---

[1] We will refer to defendant Bruce H. Zitka as "Zitka," and defendant Susan K. Hernandez-Zitka as "Hernandez-Zitka."

This case was previously before this Court when the prosecution appealed an order granting defendants' motion to quash and dismissing all charges. The trial court, relying on the outcome of an earlier civil lawsuit brought by the Norton Shores city attorney in a civil nuisance abatement action, ruled that the prosecutor was collaterally estopped from bringing this criminal action. This Court reversed that decision and remanded the case to the trial court. *People v Zitka*, 325 Mich App 38, 53; 922 NW2d 696 (2018). This Court's prior decision provides the following summary of the relevant background facts that led to the civil litigation:

> Defendants own and operate three Internet lounges located in Muskegon County: The Landing Strip, The Lucky Mouse, and Fast Lane. At these establishments, customers can open accounts to wager on and play games online, including slot and lottery-type games. On April 14, 2015, the Michigan Gaming Control Board (MGCB) began an investigation to determine whether illegal gambling activities were taking place at the lounges. The MGCB interrupted this investigation, however, when the Norton Shores Police Department began its own independent investigation of allegations that unlawful gambling activities were taking place at The Landing Strip. The city attorney for Norton Shores subsequently filed in the Muskegon Circuit Court a civil-nuisance-abatement action against The Landing Strip under the local zoning code. The parties ultimately agreed to dismissal of that case, and the court entered a stipulated order of dismissal on January 28, 2016, stating in part, "Defendants agree to operate the Landing Strip LLC without violation of any applicable gambling laws or ordinances *as it is currently operating*." (Emphasis added.)

> Following the conclusion of the civil lawsuit, the MGCB resumed its investigation of the three lounges in February 2016. As a result of this investigation, defendants were each charged with three counts of conducting a gambling operation without a license, MCL 432.218(1)(a), and three counts of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(e). The amended information alleges an offense period extending from February 1, 2016, through October 31, 2016. The district court conducted a two-day preliminary examination and, on January 27, 2017, issued an opinion and order determining that probable cause supported the charges and binding over the cases to the Ingham Circuit Court. In reaching this conclusion, the district court determined that the offense of using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(e), is a specific-intent crime, while conducting a gambling operation without a license, MCL 432.218(1)(a), constitutes a general intent crime. With respect to the Muskegon County Circuit Court's stipulated order of dismissal, the district court was "not persuaded that the . . . [order], in a civil proceeding, is particularly helpful here in relation to the probable cause standard."

> In the Ingham Circuit Court, defendants filed identical motions to quash, arguing that the district court erred by determining that the offense of conducting a gambling operation without a license was a general-intent crime as opposed to a specific-intent crime. Defendants further asserted that because the stipulated order dismissing the civil case reflected a judicial determination that defendants were operating legally, defendants were acting under a mistake of law that negated the

-2-

*mens rea* elements of both offenses.  The circuit court granted defendants' motions to quash and stated on the record as follows:

> My opinion is based upon the fact that the Attorney General of this state, in part, has the authority to intervene in any litigation that they want to that would be something that relates to state law, I believe they could have gone back to the circuit judge in this case and asked to intervene and have this reargued in some fashion as to its applicability.

> This appears to be a situation where apparently the Attorney General's office and their other agencies were so aggrieved by these poor people that they felt it necessary to investigate for months and months as to whether they existed. They could have walked right in and seen.  But in my opinion, when a circuit judge of—is it Muskegon?

> \* \* \*

> . . . [The Muskegon Circuit Court judge] has the right to make these rulings and put these rulings in effect.  But as I have seen in my cases, I have been chastised.  I have been appealed.  I have even had people come in here and consent to things and your office appealed that because the consent was wrong.  I am just amazed. These cases are dismissed. [*Zitka*, 325 Mich App at 41-43 (footnote omitted).]

On appeal, this Court held that the circuit court abused its discretion in determining that the state's criminal charges were barred by collateral estoppel.  *Id.* at 47.  This Court reasoned that the two proceedings were not substantially similar and that the state Attorney General was not in privity with the city attorney.  *Id.* at 45-47.  It also stated that the purposes of the two proceedings were "fundamentally different," which is a recognized basis for declining to apply collateral estoppel.  *Id.* at 47.

In its analysis of the relevant statutes, this Court stated that the language of MCL 432.218(1)(a) indicated that conducting an unlicensed gambling operation was a general-intent crime, as opposed to a specific-intent crime.  *Id.* at 50-51.  This Court then held that defendants' defenses of mistake of law and entrapment by estoppel were not applicable.  *Id.* at 52.  This Court specifically held that defendants' mistake-of-law argument had "no effect" on the charges of conducting an unlicensed gambling operation because it was a general-intent crime.  *Id.*  In particular, this Court concluded that "[d]efendants . . . need not have intended to violate the law but rather simply have intended to perform the act of 'conducting' an unlicensed gambling operation" and that "defendants' alleged belief that they were operating their establishments in compliance with the law is immaterial to a determination of whether they committed this offense." *Id.*  This Court also held that defendants' argument was "equally unavailing with respect to the specific-intent charges brought under MCL 752.796 and MCL 752.797(3)(e)."  *Id.*  This Court noted that entrapment by estoppel and mistake of law "both require that the alleged reliance on a

-3-

public official's representation be 'reasonable' or 'justified,' " and that "[d]efendants are unable to meet this requirement." *Id.* at 52-53. Accordingly, this Court reversed the trial court's dismissal order and remanded for further proceedings. *Id.* at 53.

On remand, defendants moved to admit evidence of the Norton Shores investigation and the results of that civil lawsuit. Defendants argued that this evidence was necessary to defend against the charges, even though this Court had ruled that MCL 432.218(1)(a) was a general-intent crime and that it was unnecessary to show that defendants intended to violate the law. The trial court denied defendants' motion, ruling that the evidence was not admissible in light of this Court's decision in *Zitka*. Following a joint jury trial, the jury found both defendants guilty of three counts each of conducting an unlicensed gambling operation and three counts of using a computer to commit a crime. Defendants now appeal.

## I. ADMISSIBILITY OF THE CIVIL LITIGATION

Defendants argue that the trial court abused its discretion and violated their constitutional right to present a defense by excluding evidence related to the previous civil lawsuit at their criminal trial. In particular, they argue that the dismissal order in the civil lawsuit was admissible to show that they believed they were acting in compliance with the law. We disagree.

"The decision whether to admit evidence is within a trial court's discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). "An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018) (quotation marks and citation omitted). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566; 876 NW2d 826 (2015). "To the extent that the trial court's ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 206; 853 NW2d 653 (2014) (quotation marks and citation omitted). Likewise, "[t]his Court reviews de novo whether defendant suffered a deprivation of his constitutional right to present a defense." *People v Steele*, 283 Mich App 472, 480; 769 NW2d 256 (2009). Whether the law-of-the-case doctrine applies is a question of law that we also review de novo. *Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001).

"A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), lv den 483 Mich 856 (2009). "But this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* (quotation marks and citations omitted); see also *United States v Scheffer*, 523 US 303, 308; 118 S Ct 1261; 140 L Ed 2d 413 (1998) ("A defendant's interest in presenting such evidence may thus bow to accommodate other legitimate interests in the criminal trial process.") (quotation marks and citations omitted). For example, consistent with our rules of evidence, "the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008), quoting *Scheffer*, 523 US at 308.

In considering defendants' argument that the trial court's exclusion of the challenged evidence violated their right to present a defense, the threshold question is whether the circumstances or outcome of the Norton Shores civil litigation was probative of any fact that was of consequence to the determination of the criminal action. As a general rule, "relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." MRE 402. " 'Relevant evidence' [has a] tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "[A] material fact need not be an element of a crime or cause of action or defense but it must, at least, be 'in issue' in the sense that it is within the range of litigated matters in controversy." *People v Mills*, 450 Mich 61, 68; 537 NW2d 909 (1995) (quotation marks and citation omitted). This Court's prior decision in *Zitka* establishes that the challenged evidence was not relevant, and therefore, the trial court did not abuse its discretion by excluding the evidence.

## A. RELEVANCY OF THE CIVIL LAWSUIT TO THE GAMBLING OPERATION CHARGE

This Court held in *Zitka*, 325 Mich App at 50-51, that conducting a gambling operation without a license is a general-intent crime. " '[U]nder the doctrine of the law of the case, if an appellate court has passed on a legal question and remanded the case for further proceedings, the legal question will not be differently determined in a subsequent appeal in the same case where the facts remain materially the same.' " *Ingham Co v Mich Co Rd Comm Self-Ins Pool*, 329 Mich App 295, 303; 942 NW2d 85 (2019), quoting *Bennett v Bennett*, 197 Mich App 497, 500; 496 NW2d 353 (1992). The binding nature of the doctrine typically "applies without regard to the correctness of the prior determination." *People v Herrera (On Remand)*, 204 Mich App 333, 340; 514 NW2d 543 (1994) (quotation marks omitted). However, "[p]articularly in criminal cases, the law of the case doctrine is not inflexible and need not be applied if it will create an injustice." *People v Phillips (After Second Remand)*, 227 Mich App 28, 33; 575 NW2d 784 (1997). An "injustice" may occur when there has been an intervening change in the law, see *People v Spinks*, 206 Mich App 488, 496-497; 522 NW2d 875 (1994), or "where the prior opinion was clearly erroneous," *Phillips*, 227 Mich App at 34, citing *People v Wells*, 103 Mich App 455, 463; 303 NW2d 226 (1981).

Accordingly, this Court explained that a mistake-of-law defense was not available to the charge of conducting a gambling operation without a license because the offense is a general-intent crime. *Id.* at 51-52. This Court stated:

> Defendants therefore need not have intended to violate the law but rather simply have intended to perform the act of "conducting" an unlicensed gambling operation. See *People v Beaudin*, 417 Mich 570, 573-574, 339 NW2d 461 (1983). Accordingly, *defendants' alleged belief that they were operating their establishments in compliance with the law is immaterial* to a determination of whether they committed this offense. [*Zitka*, 325 Mich App at 52 (emphasis added).]

In addition, when discussing the additional charges of using a computer to commit a crime, this Court held that defendants could not rely on the statement by the Norton Shores city attorney in the civil suit to defend their state criminal charges, stating:

Entrapment by estoppel and mistake-of-law defenses both require that the alleged reliance on a public official's representation be "reasonable" or "justified." Defendants are unable to meet this requirement. They claim reliance on the Norton Shores city attorney's agreement in the stipulated order that operations at The Landing Strip were in compliance with applicable gambling laws and ordinances. It cannot be said that a statement by a city attorney in a civil suit involving a local ordinance could be authoritative on a matter of criminal state law such that reliance on it was reasonable. The statement was not made by the attorney general's office, by the MGCB, or by a county prosecutor. [*Id.* at 53.]

This Court's analysis in *Zitka* demonstrates that the trial court did not abuse its discretion by not allowing defendants to present evidence of the Norton Shores civil litigation at their criminal trial. We are bound by the earlier decision in *Zitka* under both the law-of-the-case doctrine and because this Court's prior decision is published. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis.").

Defendants wanted to introduce the evidence of the civil dismissal order because it contained the parties' stipulation that "[d]efendants agree to operate the Landing Strip LLC without violation of any applicable gambling laws or ordinances as it is currently operating." Defendants maintain that this evidence was relevant to show that they believed they were operating their businesses in compliance with the law. Even if defendants held this belief, however, this Court's decision in *Zitka* establishes that defendants' alleged belief that they were operating their establishments in compliance with the law is immaterial to whether they were "conducting" an unlicensed gambling operation. *Zitka*, 325 Mich App at 52. Defendants argue that this Court's prior decision did not totally foreclose this evidence for all purposes, and that a relevant issue in this case was whether they "intended to perform the act of 'conducting' an unlicensed gambling operation." They maintain that the stipulated civil order was relevant to that issue because it indicated that they did not intend to conduct "an unlicensed gambling operation." However, this Court's discussion in *Zitka* of the *mens rea* required for conducting an unlicensed gambling operation emphasized that the focus of this inquiry is whether defendants intended to "operate" what amounts to a gambling operation. This Court made it clear that its holding rested on the volitional character of the word "conducting," not on the intent to cause the outcome that their "conduct" set in motion. See *Zitka*, 325 Mich App at 50 ("[T]he statute's use of the term 'conducting' evidences an intention that the *mens rea* element of MCL 432.218(1)(a) be the intent to perform the act of 'conducting.' ").

Defendants are essentially taking the position that the prosecutor needed to prove that they specifically intended to operate an *illegal* gambling operation, or to prove that they were operating a gambling operation knowing that it was illegal. This position is not supported by this Court's decision in *Zitka*, in which this Court held that the prosecutor was only required to prove that the manner in which defendants intended to operate their cafés constituted a gambling operation within the meaning of the statute. MCL 432.218(1)(a) provides that a person is guilty of a felony for "[c]onducting a gambling operation where wagering is used or to be used without a license issued by the board." "Board" is defined as the "Michigan gaming control board." MCL 432.202(f). "Gambling operation" or "casino gambling operation" refers to "the conduct of authorized gambling games in a casino." MCL 432.202(w). MCL 432.202(v), defines the term "gambling game" as:

-6-

any game played with cards, dice, equipment or a machine, *including any mechanical, electromechanical or electronic device which shall include computers and cashless wagering systems, for money, credit, or any representative of value*, including, but not limited to, faro, monte, roulette, keno, bingo, fan tan, twenty one, blackjack, seven and a half, klondike, craps, poker, chuck a luck, Chinese chuck a luck (dai shu), wheel of fortune, chemin de fer, baccarat, pai gow, beat the banker, panguingui, slot machine, any banking or percentage game, or any other game or device approved by the board, but does not include games played with cards in private homes or residences in which no person makes money for operating the game, except as a player. [Emphasis added.]

Therefore, while evidence concerning whether defendants' operation met the statutory requirements for a gambling operation involving "gambling games" was relevant, evidence of whether defendants specifically intended their operation to be an unlicensed gambling operation or specifically intended to violate MCL 432.218(1)(a) was not relevant. Accordingly, the trial court did not abuse its discretion by excluding this evidence. Further, because the evidence was not relevant, the trial court's exclusion of this evidence did not violate defendants' right to present a defense.

Zitka also argues that this evidence should have been allowed after the prosecution introduced evidence that defendants knew that their businesses were operating illegally, such as cease and desist letters defendants saw in connection with other investigations. The record discloses that the prosecutor cross-examined defendants about their knowledge in response to defendants' claims that they did not know that what they were doing was illegal. Arguably, the trial court could have prevented defendants from introducing their lack of knowledge of the legality of their operations because their subjective beliefs were not relevant. However, because the trial court allowed defendants to introduce limited testimony about their knowledge, the prosecutor did not act improperly by cross-examining them on that subject to challenge the credibility of their testimony. Thus, we reject Zitka's claim that defendants should have been allowed to introduce additional irrelevant evidence in rebuttal.

## B. RELEVANCY OF THE EVIDENCE TO THE UNLAWFUL USE OF A COMPUTER CHARGES

With respect to the crime of using a computer to commit a crime, MCL 752.796 provides:

(1) A person shall not use a computer program, computer, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit a crime.

(2) This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law committed by that person while violating or attempting to violate this section, including the underlying offense.

(3) This section applies regardless of whether the person is convicted of committing, attempting to commit, conspiring to commit, or soliciting another person to commit the underlying offense.

In the prior appeal, this Court characterized the offense of using a computer to commit a crime as a specific-intent crime. See *Zitka*, 325 Mich App at 52. However, this Court did not explain what specific intent is necessary for a conviction under MCL 752.796. The language of MCL 752.796 prohibits the use of a computer to "commit a crime." The alleged crime in this case was "[c]onducting a gambling operation in which wagering is used or to be used without a license issued by the board." MCL 432.218(1)(a). "[I]n order to commit a specific intent crime, an offender must subjectively desire *or know that the prohibited result will occur*, whereas in a general-intent crime, the prohibited result need only be reasonably expected to follow from the offender's voluntary act, irrespective of any subjective desire to have accomplished such result." *Gould*, 225 Mich App at 85, quoting *Lerma*, 66 Mich App at 569-570 (emphasis added). Thus, as applied to this case, to obtain a conviction under MCL 752.796, the prosecutor was required to prove that defendants specifically intended to "use[] a computer program, computer system, or computer network to commit, attempt to commit, conspire to commit, or solicit another person to commit" the general-intent crime of "[c]onducting a gambling operation in which wagering is used or to be used without a license issued by the board." The specific intent necessary to commit this offense is the intent to use a computer to conduct a gambling operation without a license, which constitutes a crime. Contrary to what defendants suggest, the prosecutor was not required to prove that they used the computer with the specific intent or knowledge that the gambling operation they were conducting was illegal. This would effectively convert the underlying offense into a specific-intent crime, contrary to this Court's decision in *Zitka*. Accordingly, the Norton Shores investigation and the settlement in that civil lawsuit would be no more relevant to determining defendants' guilt or innocence for the crime of unlawful use of a computer than for the underlying crime of conducting the gambling operation. Therefore, the trial court did not err when it precluded defendants from introducing evidence of the civil lawsuit to show that defendants lacked the specific intent necessary to support a conviction of using a computer to commit a crime.

## C. INEFFECTIVE ASSISTANCE

Zitka also argues that defense counsel was ineffective for failing to seek introduction of the evidence of the order in the civil case to rebut the prosecution's repeated introduction of evidence that defendants knew what they were doing was illegal. To establish ineffective assistance of counsel, a defendant must show that: (1) counsel's representation "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. The defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

This Court had already determined that evidence of the Norton Shores litigation was "immaterial to a determination of whether [defendants] committed [the offense of conducting an unlicensed gambling operation.]" *Zitka*, 325 Mich App at 52. Despite this ruling, defense counsel

endeavored to obtain a ruling allowing the evidence, but the trial court ruled that the evidence was not admissible. Given this Court's prior decision in *Zitka* and the trial court's subsequent ruling disallowing the evidence, Zitka cannot show that counsel's decision to refrain from again moving to admit this evidence was objectively unreasonable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## II. CHARACTER WITNESSES

Hernandez-Zitka argues that the trial court abused its discretion by granting the prosecution's motion to preclude her from offering character witnesses to testify regarding her character and reputation for being a law-abiding citizen. We disagree.

MRE 404(a)(1) permits the accused to introduce evidence of a "pertinent" character trait, and a pertinent trait must relate to the charged crime. Accordingly, a defendant has a "right to introduce evidence of his character to prove that he could not have committed the crime." *People v Whitfield*, 425 Mich 116, 130; 388 NW2d 206 (1986); see also *People v Roper*, 286 Mich App 77, 93; 777 NW2d 483 (2009) ("Under MRE 404(a)(1) a defendant may offer evidence that he or she has a character trait that makes it less likely that he or she committed the charged offense."). One example of a pertinent trait would be a defendant's character for peacefulness in a crime involving alleged violent conduct. *Id*. at 93-96. As another example, our Supreme Court has held that evidence of "the truthfulness of a person" is admissible "in an action for defamation of the person's allegedly 'untruthful' character." *People v Harris*, 458 Mich 310, 318; 583 NW2d 680 (1998).

Hernandez-Zitka fails to explain how her truthful character would have made her less likely to have committed the offense of conducting an unlicensed gambling operation. Her truthfulness or general reputation for adhering to the law has no bearing on whether she intended to operate the cafés in a manner that met the definition of a gambling operation, particularly where this Court had already determined that defendants' intent to "break the law" was not relevant to the illegal gambling charges. Because Hernandez-Zitka sought to introduce this evidence only to make an irrelevant point, the trial court did not err by excluding the evidence.

## II. RES JUDICATA AND ENTRAPMENT BY ESTOPPEL

Hernandez-Zitka also argues that res judicata and entrapment by estoppel are valid defenses to her convictions in this case. She recognizes that this Court previously ruled that entrapment by estoppel did not apply, but claims that the prior decision was made without all necessary facts. We review de novo whether res judicata bars a subsequent action. *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004). Whether entrapment by estoppel applies is a question of law that we review de novo. *People v Fyda*, 288 Mich App 446, 456; 793 NW2d 712 (2010).

Although the doctrines of res judicata and collateral estoppel are distinguishable, they share the common element of privity. In *Zitka*, 325 Mich App at 44, this Court discussed the doctrine of collateral estoppel as follows:

The doctrine of collateral estoppel generally precludes relitigation of an issue in a subsequent proceeding when that issue has previously been the subject of a final judgment in an earlier proceeding. *Porter v Royal Oak*, 214 Mich App 478, 485; 542 NW2d 905 (1995). Collateral estoppel applies when the following three conditions are satisfied: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full [and fair] opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004) (quotation marks and citations omitted; alteration in original). Mutuality of estoppel requires that the party seeking to invoke the doctrine establish that his or her adversary was either a party to, or in privy with a party to, the previous action. *Id*. at 684.

In contrast, res judicata operates to bar a second action when "(1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies." *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999). Res judicata is broadly applied in Michigan, barring not only claims already litigated, but also every claim arising from the same transaction that could have been brought by exercising reasonable diligence. *Id*. The burden of establishing res judicata is upon the party asserting that doctrine. *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002). Under either doctrine, the proponent must demonstrate the existence of privity in connection with the earlier action. *Id.*; *Monat*, 469 Mich at 684.

In the context of collateral estoppel, this Court determined in the prior appeal that the prosecutor in this case and the Norton Shores city attorney in the civil case were not in privity, despite the Attorney General's ability to intervene in the civil case under MCL 14.28 and MCL 14.101. Thus, for the purpose of deciding whether res judicata could apply to this case, we are bound by our previous determination. Accordingly, Hernandez-Zitka cannot show that res judicata barred her convictions in this case.

Hernandez-Zitka also argues that this Court erroneously decided that entrapment by estoppel was not available as a defense in her criminal case. Again, we are bound to follow this Court's decision in *Zitka*, 325 Mich App at 51-53, rejecting the availability of entrapment by estoppel in this case. The only new argument offered by Hernandez-Zitka is that the circuit court's approval of the earlier settlement should have allowed her to rely on the legality of her prior actions. However, she does not discuss how the circuit court's decision to permit the Norton Shores settlement was a binding determination regarding whether defendants' operation of the Landing Strip was a violation of MCL 432.218(1)(a), much less a decision concerning other businesses not involved in the lawsuit. Accordingly, Hernandez-Zitka's claim that she is entitled to relief under the doctrine of entrapment by estoppel is not persuasive.

## III. OPINION TESTIMONY

Hernandez-Zitka also argues that the trial court erred when it allowed prosecution witnesses to provide opinion testimony regarding whether illegal gambling was being conducted at defendants' establishments. We review the trial court's decisions regarding the admission of evidence for an abuse of discretion. *Katt*, 468 Mich at 278.

-10-

MRE 701 permits the admission of lay opinion testimony and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702 permits the admission of expert testimony and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Nevertheless, there are limits on an expert's opinion testimony. An expert witness may not "express[ ] an opinion regarding the defendant's guilt or whether the defendant had a culpable state of mind," *People v McFarlane*, 325 Mich App 507, 523; 926 NW2d 339 (2018), or "testify about the requirements of law which apply to the particular facts in the case or to phrase his opinion in terms of a legal conclusion," *People v Drossart*, 99 Mich App 66, 75; 297 NW2d 863 (1980).

Hernandez-Zitka challenges the testimony of two witnesses who testified that defendants' cafés were illegal gambling operations. Mark Laberge, a regulations officer with the MGCB, was asked to explain, in his words, what an Internet café was. He replied, "An illegal casino." After defense counsel objected, the trial court struck the term "illegal" from his response.[2] Later, after Laberge discussed his visit to Fast Lane, how he was given a café user account and access to the sweepstopia.com website, and how he was able to obtain cash from the café when he won games on the website, he was asked what he looked for to determine whether gambling was occurring. Laberge replied, "Was there consideration, was there chance, and was there a prize." He then testified that he found all of these elements in this case. When defense counsel objected, the trial court stated that counsel would be able to cross-examine Laberge about this opinion.

Laberge's initial response that Internet cafés are *illegal* casinos was improperly phrased in terms of a legal conclusion. However, the trial court adequately cured this error by quickly striking the objectionable portion of his response. Defense counsel assented to this remedy. Thus, Hernandez-Zitka cannot now claim that this remedy was insufficient. See *People v Buie*, 491 Mich 294, 312; 817 NW2d 33 (2012) (explaining that a defendant should raise objections at a time when the trial court can correct them and is not permitted to "harbor error as an appellate parachute") (quotation marks and citations omitted). With respect to the later testimony, Laberge's statement

---

[2] The trial court later instructed the jury not to consider any testimony that was excluded or stricken.

that the Fast Lane operation shared the characteristics of consideration, a game of chance, and a prize with other gambling establishments was not an improper comment on the ultimate question of Hernandez-Zitka's guilt. While this testimony supported a finding that defendants' cafés were gambling operations, this question was left to the jury to determine. As with the first comment, defense counsel was also permitted to cross-examine the witness regarding the bases for his conclusions that the characteristics of a gambling operation existed. Therefore, Hernandez-Zitka is not entitled to relief.

Hernandez-Zitka also argues that the prosecutor improperly elicited similar testimony from John Lessnau, the manager of the criminal investigation section for the MGCB. Lessnau was qualified as an expert witness in the field of illegal gambling. After discussing the same three elements of consideration, chance, and a prize, Lessnau also discussed Sweepstopia.com, stating that it did not have a gambling license. He then testified about his investigation into the Internet sites accessed by the customers at defendants' cafés, and stated that roughly 80 percent of the traffic went to Sweepstopia.com. Over defense counsel's objection, Lessnau was then asked about his opinion of Sweepstopia.com, and he testified that the website was operating illegally. This was not improper expert testimony because Lessnau testified about his opinion concerning the website, not defendants' cafés. This answer could have led the jury to find that because a majority of defendants' customers visited this website, the cafés were also conducting illegal gambling operations. However, Lessnau did not provide this legal conclusion about defendants' cafés or their guilt.

After explaining sweepstakes and how they differ from a lottery, and that Michigan does not have an exception for "internet sweepstakes café" operations from the general ban on unlicensed gambling, Lessnau was asked his opinion about defendants' operations.

> *Q*. Okay. Having been to both–to all three locations here, were
>
> they internet sweepstakes cafés, in your opinion?
>
> *A*. They were illegal gambling operations.

Defense counsel immediately objected, stating, "Your Honor, if the court could clarify that the jury is going to make the ultimate decision. That this is one witness' (sic) opinion, if the court would clarify that for the jury." The trial court replied that it had already so instructed the jury twice and that the jury would receive further instructions about its duty to determine the weight and credibility of all of the evidence. The trial court later provided such an instruction.

As with Laberge's testimony, the remedy that defense counsel sought was sufficient to cure any prejudice. See *Buie*, 491 Mich at 312. The court's instructions made it clear to the jury that it would ultimately decide whether defendants' businesses were illegal gambling operations. "Jurors are presumed to follow their instructions," and jury instructions are presumed to "cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

Affirmed.

/s/ Jane E. Markey
/s/ Patrick M. Meter
/s/ Michael F. Gadola